[Civ. No. 25274. First Dist., Div. Two. Aug. 25, 1969.]

AMERICAN MOTORISTS INSURANCE COMPANY, Plaintiff and Appellant, v. ARTHUR M. CARVER et al., Defendants and Respondents.

Gassett, Perry, Katzen & Frank and Thomas O. Hurst for Plaintiff and Appellant.

No appearance for Defendants and Respondents.

TAYLOR, J.—American Motorists Insurance Company (hereafter insurer) appeals from that portion of a judgment declaring that it was bound to provide coverage to the insured, respondent Carver, who acquired a 1957 Dodge station wagon before renewing his policy, but neither reported the acquisition nor requested coverage until the occurrence of an accident several days after the renewal. The only question on appeal is whether the trial court correctly concluded that the term "policy period," as used in the "newly acquired automobile" provision of the policy was ambiguous.

As Carver and the other respondents have failed to file a brief on this appeal, we can accept as true the statement of facts in the insurer's opening brief and are under no duty to seek out points of law in support of the judgment. However, this does not mean that reversal is automatic since the burden remains on the insurer to show error and we must examine the points raised to see if reversal is merited (Cal. Rules of Court, rule 17(b); *Evans* v. *Evans,* 185 Cal.App.2d 566 [8 Cal.Rptr. 412]).

The insurer's brief sets forth the following facts: On December 13, 1964, the insurer issued to Carver liability policy No. MK 9792 on a 1963 Chevrolet truck, for a period of six months. The policy defined an owned automobile as set forth, so far as pertinent, in the footnote below.[1] The policy expired on June 18, 1965, but could be renewed for successive policy periods of six months. On May 24, 1965, an agent of the insurer mailed Carver a renewal premium invoice indicating the expiration date and that the payment for the next six months period was due. Carver usually paid his insurance premium on the renewal date or shortly thereafter.

Carver acquired possession of the 1957 Dodge and the white registration slip from Whitco Construction Company on May 15; on May 19, Carver received the pink certificate of ownership for the Dodge. At that time, the Dodge was not operable. The Dodge became operable on June 22, 1965, when respond-

---

[1] "(2) The company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition *and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition* of his election to make this and no other policy issued by the company applicable to such automobile, . . ." (Italics added.)

ent Ely, a member of Carver's household, without his consent, took the Dodge and was involved in an accident with respondents Meredith. Carver first notified the insurer of the acquisition of the Dodge on June 25, 1965, when he paid the renewal premium on the policy that had expired on June 18. At this time, Carver indicated that the Dodge had been acquired on May 25, and the insurer's agent refused to insure the vehicle. Subsequently, Carver, with the help of one of the owners of Whitco, changed the date on the pink slip from May 15 to May 25 in order to make it appear that the sale had taken place on May 25, and thereby bring himself within the 30-day notification provision of the policy.

On August 13, 1965, respondents Meredith filed action No. 170391 against Carver, Ely, Whitco, etc. for the damages and injuries resulting from the June 22 collision between the Dodge and the Meredith vehicle. Carver tendered defense of the Meredith action to the insurer, which thereafter instituted this declaratory relief action.

The trial court found the facts substantially as stated above, and further found that the term "policy period," as used in the above quoted provision of the policy, was ambiguous. Accordingly, the trial court concluded that since the policy was renewed on June 25, the insurer had been notified within the "policy period" and was, therefore, bound to provide coverage on the Dodge.

The question is whether the policy was ambiguous in that it was not clear whether the exercise of the renewal provision started a new six month policy period or was merely a continuance of the preceding period.

As the question is solely one of law, we make our own interpretation of the language of the policy (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d 861, 864 [44 Cal.Rptr. 767, 402 P.2d 839]). As indicated above, the definition of newly acquired automobile indicates that coverage was afforded by the policy as soon as the insured notified the company either *within 30 days after the acquisition* or *within the policy period.*

The applicable rule was stated in *Pennsylvania Thresherman & Farmer's Mut. Cas. Ins. Co.* v. *Traister* (Fla. 1965) 173 So.2d 153, whose facts are on all fours with those of the instant case. In *Traister,* as here, the insured had acquired a vehicle before the renewal date of his policy but neither informed the insurer of the acquisition nor requested coverage for the new vehicle until after it had been involved in an

accident after the renewal date. However, the newly acquired automobile provision of the policy (set forth in the footnote below)[2] did not provide alternate notification dates as here, but only 30 days. The court said at page 155: ". . . the deciding factor is whether the automobile, the ownership of which has not been communicated to the company, is owned at the time the insured purchases or renews his policy. *If the insured already owns the other automobile at the time of issuance or renewal of the policy, but doesn't notify the insurer, this automobile is not covered.* If, however, the insured acquires another vehicle after coverage has been obtained by either issuance or renewal of a policy, he is covered, even though he does not comply with the provision that he must notify the insurer within 30 days." (Italics added.)

 In the instant case, Carver had the option of notifying the company of the acquisition of the Dodge either within 30 days of the acquisition (by June 15) or within the policy period (by June 18). The uncontroverted evidence indicates that Carver knew that the policy expired on June 18 but did not notify the insurer about the Dodge until June 25, 41 days after its acquisition, and 7 days after the expiration of the December 18-June 18 "policy period." We do not think that under the circumstances of the instant case, there is any ambiguity in the use of the term "policy period," and find the trial court's interpretation of the term to include the next policy period June 18-December 18 strained and illogical.

 The reasonable interpretation of the term "policy period" is the particular period for which the policy is issued, and not the next period after renewal. The logical extension of the trial court's interpretation would allow an insured to acquire a new vehicle and take up to 12 months to report its acquisition. Here, the policy provision is an extremely liberal one as the insured has an alternative of notifying the insurer within 30 days of the acquisition or within the six-month policy period. Carver waited until the policy expired, renewed it, and then notified the insurer after the accident. He, therefore, clearly failed to comply with the condition of notifying the company of the acquisition within

---

[2] "(4) Newly Acquired Automobile—an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy, or the company insures all automobiles owned by the named insured and such spouse on the date of its delivery, and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; . . ."

the "policy period." Carver's abortive attempt to come within the 30-day notification provision by having the date of acquisition changed on the pink slip indicates that he understood the clear terms of the policy and was not victimized by any alleged ambiguity.

Reversed.

Shoemaker, P. J., and Agee, J., concurred.