[Civ. No. 26431. First Dist., Div. One. Feb. 16, 1971.]

WILLIAM ARTHUR PECHTEL, JR., Plaintiff and Respondent, v. UNIVERSAL UNDERWRITERS INSURANCE COMPANY, Defendant and Appellant.

**COUNSEL**

Channell, McNamara & Lewis, William R. Channell and Richard G. Logan for Defendant and Appellant.

Warwick & Devane and Joseph F. Devane for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant insurer has appealed from a judgment in an action for declaratory relief which determined that its policy furnished uninsured motorist coverage as defined in section 11580.2 of the Insurance Code of this state, and that plaintiff as a passenger on the named insured's vehicle was entitled to the benefits of that insurance. A form of waiver was signed by the insured that purported to be in accordance with the provisions of section 11580.2, subdivision (a) of the California Insurance Code which permits the insured and the company to so agree.[1] The court found that the application form and policy were ambiguous and misleading, that the insured was thereby misled and did not intentionally and knowingly waive his right to the statutory coverage. The insurer contends that those findings are not supported by the evidence because there is in fact no ambiguity in the pertinent documents, because the understanding of the insured that he was waiving two types of coverage rather than one, if such were the fact, could not serve to give a right to reinstate on the coverage in question, and because the plaintiff, as a derivative insured, has no standing to set aside the waiver.

An examination of these contentions reveals that the plaintiff had standing to sue, that there was some ambiguity in the provisions of the application for the policy as it was understood by the named insured, but that he, in any event, unequivocally waived the statutory coverage in the manner provided by law. The judgment must be reversed.

The facts as revealed by the findings and the evidence, which consisted of

---

[1]Insurance Code section 11580.2, subdivision (a), provides in pertinent part, ". . . The insurer and any named insured, *prior to or subsequent to the issuance or renewal of a policy,* may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle. Such deletion by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply . . ." (Stats. 1970, ch. 472, § 1, p. 940, italics added.) The underlined clause was added to the statute in 1969 (Stats. 1969, ch. 1353, § 2, p. 2722) after the effective date, September 13, 1963, of the waiver form and the policy in this case.

the named insured's answers to interrogatories submitted by the plaintiff and the insurer are as follows:

On September 13, 1963, Robert Phippen, a 19-year-old[2] sailor applied to the insurer for a special Honda combination motorcycle physical damage and liability policy. He applied for the policy through the dealer from whom he purchased the motorcycle. Although he had a conversation with the dealer, he did not discuss the family protection and/or uninsured motorist provision with the dealer. The record suggests that the applicant merely picked up an application form from where they were on display at the dealers, and never discussed insurance with anyone there. He apparently never reviewed the application with any other agent or employee of the insurer. He does not claim that any misrepresentation was made to him by any such agent or employee to cause him to sign in the space of the application which purports to waive uninsured motorist coverage, and he did not rely upon any representations by any such employee or agent in deciding what coverage he would obtain.

In fact, he filled out the application for motorcycle insurance in his own writing, and signed the application and the waiver form at his barracks after consulting with fellow servicemen. The applicant understood there was a difference between family protection and uninsured motorist coverage, and that both would be waived together, since they appeared jointly on the waiver endorsement form. He also understood that in waiving the uninsured motorist coverage his premium would be, and it actually was, $4 less. A fellow serviceman in his barracks advised him to waive the family protection and uninsured motorist coverage.

The application, as filled out by Phippen, after giving personal information and data concerning his vehicle, shows that he elected to dispense with "Honda Motorcycle Protection," which offered various options of deductible collision, fire, theft and comprehensive insurance at specified premium rates, that he elected individual liability protection covering $10,000 bodily injury ($20,000 each accident), and $5,000 property damage at a premium of $42 for the rated displacement of his vehicle, and that he rejected "Family Protection Against Uninsured Motorist (see note below Chart II)." He filled in a total premium of $42.

The note below Chart II, reads as follows: "NOTE: If Family Protection is desired, add $4.00 per year to above liability premiums. IF NOT DESIRED

---

[2]Although the plaintiff set up the applicant's minority as a ground for avoiding the waiver in his original complaint, it was not carried forward to the amended complaint upon which the case was tried. A similar issue was resolved for the insurer in *Holland v. Universal Underwriters Ins. Co.* (1969) 270 Cal.App.2d 417, 421-422 [75 Cal. Rptr. 669].)

sign this waiver of Uninsured Motorists Coverage. [¶] In consideration of a return premium of $4 per year the undersigned insured and the Company, in accordance with the provision of Section 11580.2(a) of the California Insurance Code which premits [*sic*] the insured and the Company so to agree, do agree that the provisions of this policy covering damages from bodily injury which the insured may be entitled to recover from the owner or operator of an uninsured motor vehicle is hereby waived and is void and of no effect. [¶] When signed, this endorsement shall be attached to and form a part of the policy when issued.

"/s/ Robert Phippen
 Signature of Named Insured."

The policy as issued October 8, 1963, effective as of September 13, 1963, the date of the application, shows on its face that it was issued for the following coverages: "A. Bodily Injury Liability" for stated limits at a premium of $28. "B. Property Damage Liability" for stated limit at a premium of $14, and that "U. Family Protection Coverage" was "Waived." The total premium was that which the named insured had designated in his application. Attached to the policy is a lengthy endorsement entitled "Family Protection Coverage (Automobile Bodily Injury Liability) (California)" which recites that it covers "Damages for Bodily Injury Caused by Uninsured Automobiles," and which, on cursory inspection, appears to be designed to comply with the requirements of section 11580.2 of the Insurance Code. A second endorsement entitled "Waiver of Family Protection or Protection Against Uninsured Motorists Coverage (California)" reads as follows:

"This endorsement, effective September 13, 1963 forms a part of policy No. 377700 issued to Robert G. Phippen, NPS Class 63-4 Minsy, Vallejo, California by Universal Underwriters Insurance Company." It goes on to state verbatim the text of the waiver found on the application. This endorsement bears what appears to be Phippen's signature.

On December 6, 1963, while the policy was in force, the plaintiff, while a passenger on a vehicle operated by Phippen, was injured as the result of the operation of another vehicle which was owned and operated by an uninsured motorist.

I

The insurer's suggestion that the plaintiff has no standing to set aside the waiver begs the question. In order to recover the plaintiff must show that there was in existence at the time of loss, either expressly or by operation of law, a contract which furnished him indemnity. (Civ. Code, § 1559; and

see, *R. J. Cardinal Co.* v. *Ritchie* (1963) 218 Cal.App.2d 124, 136 and 149-150 [32 Cal.Rptr. 545].) If there was no effective waiver, both the law and the "Family Protection Coverage" contained in the policy made him an additional insured as a "person . . . in or upon" (§ 11580, subd. (b)), or a "person . . . occupying" (insurer's policy) the insured motorcycle.

In *Hendricks* v. *Meritplan Ins. Co.* (1962) 205 Cal.App.2d 133 [22 Cal. Rptr. 682], the court observed, "It is true that plaintiffs were not parties to the insurance contract but they are clearly members of a class for whom the benefits of the Uninsured Motorist Law are intended to apply." (205 Cal.App.2d at p. 139.) Although the plaintiff may not have the right to set aside the valid provisions of the contract between the insurer and its policyholder, as a member of the class to be benefited he is entitled to a judicial determination as to whether a valid waiver was ever effected. "[The insurer's] attempt to exclude coverage required by the state as a matter of public policy can be effectual only if there has been a strict compliance with the provisions of the law permitting such exclusions." (*Id.*)

## II

"It has been said that the purpose for the uninsured motorist statute (Ins. Code, § 11580.2) is to give monetary protection to persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others. The statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own. (See *Valdez* v. *Federal Mut. Ins. Co*. 272 Cal.App.2d 223, 226 . . .)" (*Allstate Ins. Co.* v. *Smith* (1970) 9 Cal. App.3d 898, 902 [88 Cal.Rptr. 593]. See also, *Mission Ins. Co.* v. *Brown* (1965) 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275].)

"Every bodily injury motor vehicle liability policy issued or delivered in this state must provide uninsured motorist coverage [citation], and the statute is part of every policy of insurance to which it is applicable to the same effect as if it was written out in full in the policy itself. [Citations.] The mere acceptance of a liability policy with terms more restrictive than the statute is not to be deemed a waiver of the statutory coverage. [Citation.]" (*Kincer* v. *Reserve Ins. Co.* (1970) 11 Cal.App.3d 714, 718-719 [90 Cal.Rptr. 94]. See also, *California Cas. Indem. Exch.* v. *Steven* (1970) 5 Cal.App.3d 304, 306 [85 Cal.Rptr. 82]; *Bohlert* v. *Spartan Ins. Co.* (1969) 3 Cal.App.3d 113, 118 [83 Cal.Rptr. 515]; *Utah Home Fire Ins. Co.* v. *McCarty* (1968) 266 Cal.App.2d 892, 895 [72 Cal.Rptr. 460]; and *Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 136-137.)

"Under the plain language of the uninsured motorist statute, the parties to an automobile liability insurance contract may delete or omit uninsured motorist coverage only '. . . by an agreement in writing.' (Ins. Code, § 11580.2.)" (*Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d 714, 719. See also, *Mission Ins. Co.* v. *Brown, supra,* 63 Cal.2d 508, 511; *California Cas. Indem. Exch.* v. *Steven, supra,* 5 Cal.App.3d 304, 307; and *Bohlert* v. *Spartan Ins. Co., supra,* 3 Cal.App.3d 113, 118.)

"The statute clearly does not contemplate a piecemeal whittling away of liability, either territorially or under certain driving conditions, for injuries caused by uninsured motorists." (*Mission Ins. Co.* v. *Brown, supra,* 63 Cal.2d 508, 511.) Accordingly, the courts have struck down attempts to restrict the territory in which the coverage will be effective (see, *Mission Ins. Co.* v. *Brown, supra*), or to exclude named individuals otherwise covered by the statute (see *California Cas. Indem. Exch.* v. *Steven, supra,* 5 Cal.App.3d 304, 307; and *Valdez* v. *Federal Mut. Ins. Co., supra,* 272 Cal.App.2d 223, 230), or to exclude a class of such individuals (*Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d 210, 212 [58 Cal. Rptr. 243]; and *Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 138-139). Similarly, the statutory and policy provisions have been construed broadly to furnish coverage to all who may possibly come within the class to be protected. (See, *Allstate Ins. Co.* v. *Smith, supra,* 9 Cal. App.3d 898, 902-903.)

"An insurer has a right to limit coverage in plain and understandable language, and is at liberty to limit the character and extent of the risk it undertakes to assume. [Citation.] The right of a company to limit its contract of coverage may not be questioned [citation], provided the limitation is not prohibited by public policy or statute. [Citation.]" (*Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d 714, 718. See also, *Darrah* v. *California State Automobile Assn.* (1968) 259 Cal.App.2d 243, 246 [66 Cal.Rptr. 374]; and *Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 137.)

■ Where the named insured and the insurer clearly have agreed to delete the uninsured motorist coverage, the agreement will be upheld. (See *Holland* v. *Universal Underwriters Ins. Co.* (1969) 270 Cal.App.2d 417, 420 [75 Cal.Rptr. 669]; *Myers* v. *National Automobile & Cas. Ins. Co.* (1967) 252 Cal.App.2d 599, 603 [60 Cal.Rptr. 743]; *Weatherford* v. *Northwestern etc. Ins. Co.* (1966) 239 Cal.App.2d 567, 569 [49 Cal.Rptr. 22]; and cf. *Lewis* v. *Fidelity & Cas. Co.* (1962) 207 Cal.App.2d 160, 162-163 [24 Cal.Rptr. 388].) On the other hand, when a waiver is not conspicuous, plain and clear, it will not be upheld. (See, *Kincer* v. *Reserve Ins. Co., supra,* 11 Cal.App.3d 714, 719-720; *Bohlert* v. *Spartan Ins. Co.,*

*supra,* 3 Cal.App.3d 113, 119; *Allstate Ins. Co.* v. *Dean* (1969) 269 Cal. App.2d 1, 4-5 [76 Cal.Rptr. 543]; and *Utah Home Fire Ins. Co.* v. *McCarty, supra,* 266 Cal.App.2d 892, 895.)

 The plaintiff alleged that the waiver was invalid because "The wording of the alleged waiver is inconsistent in that the words 'family protection' and 'uninsured motorist coverage' are used interchangeably and synonymously when in fact there is a substantial difference in the phrases and thereby misled and deceived [the applicant]."[3]

The trial court found: "That the aforementioned application form and policy by using 'Family Protection Coverage,' 'Family Protection' and 'Uninsured Motorists Coverage' is ambiguous and misleading."

 The question of the interpretation of the provisions of the application and the policy is a question of law upon which this court must make its independent determination. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]. See also, *Bohlert* v. *Spartan Ins. Co., supra,* 3 Cal.App.3d 113, 119; *American Motorists Ins. Co.* v. *Carver* (1969) 275 Cal.App.2d 793, 795 [80 Cal. Rptr. 332]; and *Schmidt* v. *Pacific Mut. Life Ins. Co.* (1969) 268 Cal. App.2d 735, 738 [74 Cal.Rptr. 367].) *Bohlert* v. *Spartan Ins. Co., supra,* supports the interpretation inherent in the finding of the trial court in this case. There the provisions of the application referred to "Uninsured Motorist" coverage at an annual premium of $25 with a note, "If not desired sign waiver below." The waiver signed by the applicant read, "The applicant hereby agrees with the company that the coverage of 'Family Protection' (Uninsured Motorists) is excluded from the policy and that the policy shall afford no coverage for damage caused by an uninsured motor vehicle as included under provisions of Section 11580.2 of the California Insurance Code." The opinion states: "According to the paragraph's language, Bohlert purportedly agreed with Spartan (1) that the policy would exclude 'the coverage of "Family Protection" (Uninsured Motorists)' and (2) that it would 'afford no coverage for damage caused by an uninsured motor vehicle as included under provisions of Section 11580.2 of the California Insurance Code.' Neither of the quoted expressions explains

---

[3]The plaintiff also alleged that the waiver was invalid because there was no return of premium to the applicant in consideration for the alleged waiver, and because the applicant was advised by the insurer that since he was a single man and had no family that it was to his best interest to waive the family protection coverage. The court resolved those contentions adversely to plaintiff and found: "That [the applicant] understood that his premium was $4.00 less than if he had purchased Uninsured Motorists Coverage and Family Protection"; and "That [the applicant] consulted fellow servicemen prior to signing the application and did not rely on any representations emanating from the defendant insurance company."

the other; their conjunctive use in the paragraph could import that they referred to two separate coverages. The term 'Family Protection' is not explained in the first expression, nor does it appear anywhere else on the form. Uninsured motorist coverage, as such, is not explained on the form, and the cryptic titles 'Uninsured Motorist' (in the checklist box) and '(Uninsured Motorists)' do not serve this purpose.

"Except for the bare—and, under the circumstances, wholly uninformative—reference to Insurance Code section 11580.2, the language providing that 'the policy shall afford no coverage for damage caused by an uninsured motor vehicle' does not show the prospective insured that it means damage incurred *by him*; he could readily construe it to mean coverage for damage caused *to others* by an 'uninsured motor vehicle' for whose operation he was responsible (coverage which would not have interested Bohlert if there were no such vehicle other than the motorcycle which he was presently covering against liability to others). Because the language is ambiguous to this extent, it does not—on its face—meet the standard that an agreement excluding uninsured motorist coverage must be 'conspicuous, plain and clear' to constitute an 'effective waiver' thereof [citation]. The ambiguity, moreover, must be construed against Spartan, either as the contracting party who caused it to be drafted [citations] or as an insurer relying upon it to exclude coverage. [Citations.]

"Answering the preliminary question of law, we conclude that the paragraph signed by Bohlert (and whether or not he read it) did not *on its face* amount to an 'effective waiver' of uninsured motorist coverage. . . ." (3 Cal. App.3d at p. 119.)

A similar suggestion is found in *Kincer* v. *Reserve Ins. Co., supra,* where the court stated: "The application consisted of only two pages. On the first page were three columns entitled, 'Premiums,' 'Limits of Liability,' and 'Coverages.' The only references to uninsured motorist protection were in the premiums and coverages columns on page one. Under premiums, the agent wrote in the word 'waived.' Under coverages were the words 'Family Protection (Uninsured Motorist).' No further reference to uninsured motorist coverage was contained in the application. A serious waiver question would thus arise even had the insured (Cecil) signed the application, which he did not." (11 Cal.App.3d at p. 719.)

From the foregoing it may be assumed that the finding of the court was proper without attempting to dwell on distinctions, which are discussed below, between the facts in the foregoing cases and those in this case. The conclusions in this regard are supported by the extrinsic evidence, embodied in the finding of the trial court which recites: "That [the named

insured] understood that there was a difference between Family Protection and Uninsured Motorists Coverage but that both were waived together since they appeared jointly on the waiver endorsement form and application.[4]

## III

From the foregoing it may be concluded that the facts and the law sustain the court's further finding, "That [the named insured] was misled by the defendant insurance company by their ambiguous and misleading statements as aforesaid." It does not, however, necessarily follow that because the named insured believed that he was waiving two coverages, that he did not intentionally waive one, as indicated by the following finding of the court: "That [the named insured] did not intentionally and knowingly waive his right to Uninsured Motorists Coverage under Section 11580.2 California Insurance Code."

In *Kincer* v. *Reserve Ins. Co., supra,* the court concluded: "When the only reference to uninsured motorist coverage is contained in the preamble, and where there is nothing in the body of a policy to indicate that uninsured motorist coverage is not being furnished, and where no endorsements are attached to the policy explaining the effect of a waiver of uninsured motorist protection, the insured may not be deemed to have waived such protection. [Citation.]" (11 Cal.App.3d at p. 720.) Here the policy not only showed on its face that "Family Protection Coverage" was waived, but it contained an endorsement which fully set forth that coverage, and a waiver, signed by the named insured, which equated the family protection coverage with the protection against uninsured motorists required by the California Insurance Code.

In *Bohlert* v. *Spartan Ins. Co., supra,* the court after construing the pro-

---

[4]In defense of the language used by the insurer it should be noted that the first statutory requirement that accidents caused by uninsured motorists be covered was effective September 18, 1959 (Stats. 1959, ch. 817, § 1, p. 2835). The type of insurance adopted in that statute was previously underwritten under the title "Family Protection," presumably because it covered, as was subsequently required under the statute, "the named insured, and the spouse of the named insured and relatives of either while residents of the same household" (§ 11580.2) or a class similarily defined. (See, *Lewis* v. *Fidelity & Cas. Co.* (1962) 207 Cal.App.2d 160, 163 [24 Cal.Rptr. 388].) If the matter of ambiguity were one of first impression, the following language from *Lewis* might be deemed controlling, "The named insureds are not parties herein, and although one of them was called as a witness, he was not asked whether or not he misunderstood the meaning or effect of any provision of the policy. The trial court was clearly justified in refusing to create such a patently artificial ambiguity where none in fact existed solely to permit a third party to recover against the insurer." (*Id.*)

visions of the application in the manner quoted above,[5] continued: "The final question is whether Bohlert, signing it under all the circumstances, executed an 'intentional relinquishment of a known right after knowledge of the facts' (*Wienke* v. *Smith, supra,* 179 Cal. 220 at p. 226 [176 P. 42]; *Kay* v. *Kay, supra,* 188 Cal.App.2d 214 at p. 218 [10 Cal.Rptr. 196]), which is a question of fact alone. [Citation.] The answer depends upon whether Bohlert and Munroe discussed uninsured motorist coverage and the former's legal right to it under the statute, and whether Bohlert understood the meaning imparted to the paragraph by Spartan." (3 Cal.App.3d at pp. 119-120. See also, *Dalzell* v. *Northwestern Mutual Ins. Co.* (1963) 218 Cal.App.2d 96, 101-102 [32 Cal.Rptr. 125]; and *Scott* v. *Federal Life Ins. Co.* (1962) 200 Cal.App.2d 384, 391 [19 Cal.Rptr. 258].)

In *Bohlert* the applicant testified in substance, ". . . Munroe [the insurer's agent] filled out the application form and told Bohlert to sign it where an 'X' had been marked. Bohlert signed, but was not told to read the form, did not read it before signing, was not given an opportunity to read it and did not receive a copy of it. He did not tell Munroe that he did not want uninsured motorist coverage; the subject was never discussed, and Bohlert did not know that he was 'waiving' such coverage when he signed the form." (3 Cal.App.3d at p. 117.) He requested, but was denied, specific findings on the issues raised by this testimony. The appellate court concluded, "A close analysis of Munroe's testimony produces substantial doubt that it establishes these facts sufficiently to support a finding in Spartan's favor, against Bohlert's explicit testimony that the subject was not discussed and the agreement not explained. We are not called upon, however, to assess the testimony in this regard, because (1) the factual issues mentioned were demonstrably material, and (2) Bohlert requested special findings on them and was refused. . . . Because of the latter event, we cannot infer that the trial court found adversely to Bohlert on any of the issues presented. [Citations.] It thus appears that the trial court failed to make findings 'of all issues of fact in the case' [citation], which omission requires reversal of the judgment." (3 Cal.App.3d at p. 120.)

In this case it is clear from the named insured's testimony that he knew that he was waiving uninsured motorist's coverage and securing a $4 saving in the cost of his insurance, and that the decision was made by him, upon independent advice, without any interference from the insurer or its agents. The fact that he may have thought that the two coverages—"Family Protection" and "Uninsured Motorists Coverage" were different,

---

[5]In *Bohlert* the facts recite, "The liability policy purchased on July 16th patently excluded uninsured motorist coverage, but it was not physically delivered to Bohlert until after he had been injured." Here the policy with both endorsements was received and retained by the named insured without comment before the injury to his passenger.

does not render his waiver of the latter ineffective. In *Bohlert* the applicant was offered only one place to sign—below the waiver. Here the form provided for separate signatures for the application itself and for the waiver. Phippen signed both, and, as well, the endorsement attached to the policy. In *Bohlert,* the waiver contained a "bare—and . . . wholly uninformative—reference to Insurance Code section 11580.2." Here the application and the endorsement expressly recite that the named insured waives "the provisions of this policy covering damages from bodily injury *which the insured may be entitled to recover* from the owner or operator of an uninsured motor vehicle." (Italics added.) The rationale of *Bohlert* is inapplicable.

■ Under certain circumstances a contract may be rescinded for unilateral mistake. (See *Moore* v. *Copp* (1897) 119 Cal. 429, 435-436 [51 P. 630]; and *Mitidiere* v. *Saito* (1966) 246 Cal.App.2d 535, 537-538 [54 Cal.Rptr. 665].) Nevertheless, "A mistake of fact may be urged as a defense to an action upon a contract only if the mistake is material to the contract. [Citations.]" *(Edwards* v. *Lang* (1961) 198 Cal.App.2d 5, 12 [18 Cal. Rptr. 60]. See also, *Roller* v. *California Pacific Title Ins. Co.* (1949) 92 Cal.App.2d 149, 156-157 [206 P.2d 694].)

■ It is suggested that the designation "Family Protection" is designed as a trap to induce unmarried vehicle owners to refrain from applying for uninsured motorist's coverage (cf. fn. 4 above). It is then assumed that the applicant would not have signed the waiver if he knew that it also deprived him personally of some coverage. In the first place, there is nothing to show whether the coverage is profitable or nonprofitable be it at $4 per year (this case), or $25 yer year *(Bohlert).* Secondly, if the insurance is written through forms which have been left to be picked up by the applicant, the probability that more applicants than not will have a family may indicate that the title is more of a sales inducement than the contrary. Finally, if the applicant had inquired as to whether he could exclude the family protection and secure uninsured motorist's coverage for himself alone, he would have received a negative answer. The cases cited above indicate that the statute requires total coverage or nothing. In *Lopez* v. *State Farm Fire & Cas. Co.* (1967) 250 Cal.App.2d 210 [58 Cal.Rptr. 243] the court expressly concluded, "It follows that the policy provision excluding from such coverage a *family member* who owns an automobile cannot prevail." (250 Cal.App.2d at p. 212, italics added.)

In *Myers* v. *National Automobile & Cas. Ins. Co., supra,* the court was upholding a finding in favor of the insurer in a case in which the named insured testified, "I wasn't being charged for uninsured motorist and therefore I wasn't covered by that." (252 Cal.App.2d at p. 601.) The testimony

here compels the same conclusion: ". . . there is no dispute between the insurer and the person to whom the policy was issued as to what the provisions of the policy were to be. The evidence is clear and convincing that both intended and understood that the uninsured motorist provision was to be deleted; and that such intention was expressed in the written application." (*Id.* at p. 603.)

The finding of the court that the named insured did not knowingly waive his right to uninsured motorist coverage is contrary to the evidence, and at best can only be based on surmise and conjecture. (See, *Cothran* v. *Town Council* (1962) 209 Cal.App.2d 647, 664 [26 Cal.Rptr. 319]; and *Brautigam* v. *Brooks* (1964) 227 Cal.App.2d 547, 556-558 [38 Cal.Rptr. 784].)

The judgment is reversed.

Molinari, P. J., and Elkington, J., concurred.