Filed 3/17/25  Barrido v. Wawanesa General Insurance Co. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| EDITHA BARRIDO, Plaintiff and Appellant, v. WAWANESA GENERAL INSURANCE COMPANY, Defendant and Respondent. | D085022 (Super. Ct. No. CVSW2107334) |


APPEAL from a judgment of the Superior Court of Riverside, Raquel Marquez, Judge.  Affirmed.

Tabah Law and Elvin I. Tabah for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Todd E. Lundell, John D. Edson, and Andrea S. Warren for Defendant and Respondent.


Editha Barrido brought suit against Wawanesa General Insurance Co. (Wawanesa) after it denied her claim for insurance coverage for an accident that occurred when her daughter, Arnelle Barrido, was driving her car. Wawanesa denied coverage on the grounds that Barrido's insurance policy

contained a named driver exclusion for Arnelle. After discovery in the case, Wawanesa successfully moved for summary judgment of Barrido's complaint. Barrido now appeals, arguing the named exclusion was invalid under applicable Insurance Code provisions. As we shall explain, Barrido's arguments concerning the applicable statutes do not persuade us the trial court erred by granting Wawanesa's motion for summary judgment. Accordingly, the judgment entered after the court's order granting summary judgment is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

In 2018, Barrido purchased a new Mercedes GLA 250 and obtained automobile insurance from Wawanesa, which had been her auto insurance carrier for ten years. In June 2019, Barrido consented to the electronic delivery of documents to her email address. Later the same month, Wawanesa emailed Barrido a letter stating it was excluding Arnelle as a covered driver under her automobile insurance policy.

The letter explained that, as of June 30, 2019, Wawanesa would "be adding an Exclusion of Named Driver endorsement to [Barrido's] policy indicating that [Arnelle and Marcelina Laguna (Barrido's mother) would] not be covered for further permissive use" of Barrido's insured vehicles. In the letter, Wawanesa asked Barrido to "contact our office by phone to provide your consent for the Exclusion of Named Driver endorsement within 30 days," or to email or mail a signed endorsement of the exclusion to its office within 30 days.

On August 23, 2019, Wawanesa sent Barrido a "Notice of Non-Renewal." The document stated that as a result of Barrido's failure to provide Wawanesa "with the Exclusion of Named driver form issued for Marcelina Laguna and Arnelle Barrido," the company was not renewing

2

Barrido's insurance policy and the policy would terminate on October 11, 2019.

Barrido called Wawanesa on September 17, 2019. The phone call was recorded. During the call, Barrido told the Wawanesa agent that she had misplaced the exclusion of named driver form and wanted another one to complete. The agent responded that she could take the exclusions for Arnelle and Laguna over the phone. Barrido said that was fine and consented to the exclusions. The agent asked Barrido, "Do you understand that the insurance afforded by this policy does not apply while any vehicle is operated by or under the control of Arnelle Barrido and Marcelina Laguna?" Barrido responded, "Yes." The agent then confirmed with Barrido that Barrido understood the exclusions applied to all the coverages in the policy, effective June 30, 2019. The agent provided the information to Wawanesa's underwriters and stated an offer of renewal would be sent to Barrido in the mail within 10 to 15 days.

Barrido renewed her policy in 2020 and 2021, and the renewals included the exclusion of named drivers Arnelle and Laguna. On April 15, 2021, Arnelle was driving the Mercedes GLA 250 when she collided with another vehicle. At the time of the accident, the Mercedes was insured by the renewed Wawanesa policy, which was in place for the period of April 11, 2021 to October 11, 2021, and which included the same exclusion of named drivers. The "Exclusion of Named Driver(s)" endorsement in the 2021 policy provided that "[i]n consideration of the acceptance and continuance of this policy by Wawanesa Insurance, it is understood and agreed that such insurance as is afforded by this policy does not apply while any vehicle is operated by or under the control of the Excluded Driver(s) whose name(s) is/are shown on

3

the Declarations page." The declaration page listed Arnelle as an excluded driver.

After the accident, Barrido made a claim on her policy to Wawanesa, which opened an investigation. Barrido reported to Wawanesa that Arnelle was driving at the time of the accident. After reviewing the policy, Wawanesa determined there was no coverage for the accident because the vehicle was being driven by an excluded driver at the time of the collision. On April 19, 2021, Wawanesa informed Barrido of its coverage decision by letter, which stated that coverage was denied "because the vehicle involved in the April 15, 2021 accident was driven by Arnelle Barrido, who was excluded from coverage pursuant to the Exclusion of Named Driver endorsement, which was agreed upon by you on 9/17/2019."

Thereafter, Barrido retained counsel. She filed this lawsuit in August 2021. Her complaint asserts four causes of action: declaratory relief regarding Wawanesa's duty to indemnify, breach of contract, bad faith, and unfair competition.

After engaging in discovery, Wawanesa moved for summary judgment. Wawanesa argued that Barrido's claims failed because Arnelle was driving the vehicle at the time of the accident and she was an excluded driver under the insurance policy. Specifically, Wawanesa argued that Barrido's breach of contract claim failed because the named driver exclusion in the policy excluded coverage and was enforceable. As a result, Wawanesa asserted no coverage existed for the accident, and Barrido's other claims, which depended on her assertion that Wawanesa wrongfully denied coverage, also failed.

In opposition, Barrido admitted Arnelle was driving at the time of the accident and that Arnelle was an excluded driver under the 2021 Policy, but asserted the named driver exclusion was unenforceable. Barrido argued that

4

under Insurance Code section 11580.1, her verbal agreement to the named driver exclusion in 2019 was invalid.[1]  Further, she argued that because the 2021 policy at issue was a renewal policy, the addition of the named driver exclusion into that policy was unenforceable.

The trial court agreed with Wawanesa and granted summary judgment.  The court found that "[t]he named driver exclusion in the 2021 endorsement was conspicuously presented on an entire page, titled in all capital font, in bold, and advised the insured to read it carefully."  Thus, there was no dispute "that Arnelle was an excluded driver in the 2021 policy from its inception" and, "having paid the premium," Barrido "accepted the terms and conditions of the 2021 policy."  The court also rejected Barrido's argument that Wawanesa had failed to comply with section 11580.1.  Following the court's order granting Wawanesa's motion for summary judgment, the court entered judgment in favor of Wawanesa.

Barrido timely appealed.

DISCUSSION

On appeal, Barrido argues that section 11580.1 requires a named driver exclusion to be implemented "(1) either through the terms of the policy or (2) by a separate agreement in writing," and that neither occurred here.  Further, she argues the 2021 policy did not effectively exclude Arnelle because a renewal policy cannot change the prior terms of the insurance agreement.  As we shall explain, these arguments are not well-taken.

I

"In determining whether a summary judgment motion was properly granted, 'we review the trial court's decision de novo, applying the rule that "[a] defendant is entitled to summary judgment if the record establishes as a

---

[1]     Further undesignated statutory references are to the Insurance Code.

matter of law that none of the plaintiff's asserted causes of action can prevail." ' " (*MacKinnon v. Truck Ins. Exchange* (2003) 31 Cal.4th 635, 641.) When analyzing a motion for summary judgment, "we follow the traditional three-step analysis. 'We first identify the issues framed by the pleadings, since it is these allegations to which the motion must respond. Secondly, we determine whether the moving party has established facts which negate the opponents' claim and justify a judgment in the movant's favor. Finally, if the summary judgment motion prima facie justifies a judgment, we determine whether the opposition demonstrates the existence of a triable, material factual issue.' " (*Shamsian v. Atlantic Richfield Co.* (2003) 107 Cal.App.4th 967, 975 (*Shamsian*).)

In undertaking this analysis, " '[w]e construe the moving party's affidavits strictly, construe the opponent's affidavits liberally, and resolve doubts about the propriety of granting the motion in favor of the party opposing it.' [Citation.] We are obligated to uphold the trial court's decision if it is correct on any ground, regardless of the reasons the trial court gave." (*Shamsian, supra*, 107 Cal.App.4th at p. 975.)

## II

Section 11580.1 imposes certain default terms on automobile liability policies that apply unless the parties agree otherwise. One of the default terms "compels all issuers of automobile liability policies to provide coverage for permissive users." (*Lovy v. State Farm Ins. Co.* (1981) 117 Cal.App.3d 834, 843.) The statute creates this default by providing that "[n]o policy of automobile liability insurance … shall be issued … unless it contains certain provisions," including a provision providing coverage for other users of an insured vehicle if "the use is by the named insured or with his or her permission." (§ 11580.1, subds. (a), (b)(4).)

6

Notwithstanding that default requirement, the statute explicitly allows the parties to agree by a policy's terms to exclude named drivers. The statute provides, "Notwithstanding paragraph 4 of subdivision (b) … the insurer and any named insured may, by the terms of any policy of automobile liability insurance to which subdivision (a) applies, or by a separate writing relating thereto, agree … [¶] [t]hat coverage and the insurer's obligation to defend under the policy shall not apply nor accrue to the benefit of any insured or any third-party claimant while any motor vehicle is being used or operated by a natural person or persons designated by name." (§ 11580.1, subd. (d)(1).)

Contrary to Barrido's assertion, by its plain terms, section 11580.1 does not require a "separate writing" to exclude a named driver from coverage. Rather, the parties may also agree "by the terms of any policy" to such an exclusion. (§ 11580.1, subd. (d).) In this case, the trial court correctly determined, based on the undisputed evidence presented in support of Wawanesa's motion for summary judgment, that Barrido agreed to the exclusion of Arnelle from the policy's coverage in 2019.

As discussed, Barrido concedes that in 2019, Wawanesa provided her with a named driver exclusion in a separate writing that was consistent with section 11580.1, and later a notice of nonrenewal that complied with section 663 after she failed to sign and return the named driver exclusion form. Barrido then called Wawanesa and orally agreed to the exclusion over the phone. Because Barrido does not dispute this critical fact, the policy effectively excluded her daughter Arnelle from its coverage beginning in 2019. Under section 11580.1, subdivision (d)(1), the exclusion remained "in force as long as the policy remain[ed] in force," and applied "to any continuation, renewal, or replacement of the policy by the named insured."

7

Barrido also argues that the named driver exclusion was "placed within a renewal policy," in violation of sections 660 and 663. As an initial matter, because the undisputed evidence showed the exclusion was properly implemented in 2019, and continually renewed through the time of the accident, Barrido's assertion that the exclusion was improperly instituted in 2021 is without merit. Further, Barrido's interpretation of sections 660, subdivision (e) and 663 is incorrect. Barrido argues that section 660, subdivision (e) "necessitates that an offer to renew personal automobile policies provide the same coverage," and section "663 requires a notice of nonrenewal when an offer to renew seeks to change the policy."

Section 660 sets forth definitions for various terms used within its chapter of the Insurance Code. Section 660, subdivision (e), which Barrido relies on, states: " 'Renewal' or 'to renew' means to continue coverage with either the insurer which issued the policy or an affiliated insurer, as defined in Section 1215, for an additional policy period upon expiration of the current policy period of a policy, provided that if coverage is continued *with an affiliated insurer*, it shall be the same or broader coverage as provided by the present insurer, and the insured shall be notified in writing at least 20 days prior to expiration of the current policy period of all of the following: [¶] (1) That the insurer has determined that it will not offer renewal of the policy with the present insurer. [¶] (2) That it is offering replacement in an affiliated insurer." (Italics added.) Thus, by its plain terms, this statutory provision requires "the same or broader coverage as provided by the present insurer" only when the renewal is made by "*an affiliated insurer*." (§ 660, subd. (e)(2), italics added.) As Wawanesa points out, this language has no relevance here because Barrido's 2021 policy was simply a renewal with Wawanesa, which had insured Barrido for a decade, and not an affiliate.

8

Section 663, titled "Policy expiration, delivery or mailing of renewal offer or notice of nonrenewal," provides that before a policy expires, the insurer must deliver to the insured a written or verbal offer of renewal or a notice of nonrenewal. (§ 663, subd. (a)(1)–(2).) If the insurer fails to do so, then (with certain exceptions) "the existing policy, with no change in its terms and conditions, shall remain in effect for 30 days from the date that either the offer to renew or the notice of nonrenewal is delivered or mailed to the named insured." (§ 663, subd. (c).) Section 663 does not require an offer of renewal to be on the same terms as the previously existing policy and does not preclude an insurer and insured from agreeing to policy changes through a renewal. Put simply, contrary to Barrido's interpretation of these statutes, neither section 660 nor section 663 requires an insurer to provide a notice of nonrenewal before making any changes to a policy.

Barrido also relies on three Court of Appeal decisions to support her arguments. These opinions, *Borders v. Great Falls Yosemite Ins. Co.* (1977) 72 Cal.App.3d 86 (*Borders*), *Mackey v. Bristol West Ins. Service of Cal. Inc.* (2003) 105 Cal.App.4th 1247 (*Mackey*), and *Pechtel v. Universal Underwriters Ins. Co.* (1971) 15 Cal.App.3d 194 (*Pechtel*), do not support reversal of the judgment. In *Borders*, the insured purchased a policy that explicitly waived uninsured motorist coverage. (*Borders,* at p. 88.) At the end of the policy period, the insurer did not renew the policy, but also failed to give notice of nonrenewal. The insured was subsequently involved in an accident with an uninsured motorist. In litigation over whether the policy covered the accident, the trial court held that because the insurer failed to provide notice of nonrenewal, the policy period was extended, but on the same terms as the previous policy—that is, with the waiver of uninsured motorist coverage. (*Id.* at p. 89.)

9

The Court of Appeal affirmed, holding that "[t]he renewal which resulted from failure to give notice of nonrenewal was merely an extension of the policy upon the same terms and conditions, if accepted by the named insured." (*Borders, supra*, 72 Cal.3d at p. 93.) In this context, the Court of Appeal recognized that sections 660 and 663 "give the insured the right to a renewal or extension of the term *upon the same terms and conditions* if he so chooses." (*Id*. at p. 96.) That is, where the insurer did not explicitly renew the policy on terms agreed-upon by the parties, but also did not notify the insured of nonrenewal, section 660 and 663 effectively continue the terms of the previous policy. *Borders* did not hold, as Barrido contends, that in order to change any policy terms, an insurer must first issue a notice of nonrenewal and then initiate an entirely new policy. *Borders* did not consider whether an insurer may change the terms of a policy by a renewal with notice to the insured.

The decisions in *Mackey* and *Pechtel* are also inapposite. In *Mackey*, the court held only that "[t]ermination of coverage can only be accomplished by strict compliance with the terms of any statutory provisions applicable to cancellation." (*Mackey, supra*, 105 Cal.App.4th at p. 1258.) Wawanesa did not terminate Barrido's policy, and, therefore, *Mackey* has no application here. In *Pechtel*, the court held that an insured effectively waived uninsured motorist coverage, even though the waiver was somewhat ambiguous. (*Pechtel, supra*, 15 Cal.App.3d at p. 196.) Here, there is no ambiguity in the

named driver exclusion, which in plain terms excludes coverage for any accident when Arnelle is driving.[2]

In sum, Barrido has not shown that the trial court erred when it concluded that there was no coverage because Arnelle was excluded as a named driver. Because Arnelle was not covered by the parties' insurance agreement, all of Barrido's claims fail and the trial court properly granted Wawanesa's motion for summary judgment.

DISPOSITION

The judgment is affirmed. Respondent is awarded the costs of appeal.


McCONNELL, P. J.

WE CONCUR:


IRION, J.


BUCHANAN, J.

---

[2]     Barrido also cites section 678, which governs certain property insurance policies. Like section 663, section 678 requires an insurer to provide either an offer of renewal or a notice of nonrenewal before a policy expires. (§ 678, subd. (a)(1)(A)–(B).) Unlike section 663, however, section 678 also specifically requires an insurer seeking to renew the policy on different terms to "identify the specific limits being reduced or coverage being eliminated by the offer of renewal." (§ 678, subd. (a)(1)(A)(i).) Barrido argues, confusingly, that because section 663 does not contain this language, an insurer may not make any changes to an automobile policy without issuing a notice of nonrenewal first. This argument is meritless. As discussed, the applicable automobile insurance statutes do not support Barrido's interpretation and section 678 is not relevant to this case.

11