[Civ. No. 38801. Second Dist., Div. One. Mar. 3, 1972.]

CHARLES A. ROBINSON et al., Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

**COUNSEL**

Braslow, Oria & Glogow and Jeffrey K. Oria for Plaintiffs and Appellants.

Spray, Gould & Bowers and Daniel O. Howard for Defendant and Respondent.

## Opinion

**THOMPSON, J.**—This is an appeal from a judgment in declaratory relief holding that appellant, insured, is not entitled to uninsured motorist coverage by a policy of bodily injury liability automobile insurance issued by respondent. We affirm the judgment.

The facts of the case at bench, while sketchy, are not in dispute. In February 1966, respondent issued its family automobile insurance policy to appellant. Appellant and respondent executed a "Supplemental Agreement—To Waive Uninsured Motorist Coverage" which states: "The insurer and the insured, by this supplemental agreement, waive application of the provision covering damage caused by an uninsured motor vehicle under a policy of bodily injury liability insurance on the following described car: Make of car 59 Studebaker Year 59 Body Style 4 Dr." Accordingly, the policy issued by respondent to appellant, in defining coverage afforded by it, omits reference to "Coverage U—Damages for Bodily Injury Caused by Uninsured Automobiles" although the nature of that coverage is described in the body of the policy.

The face of the policy describes its period as from "02-17-66 to 09-07-66." The body of the policy contains a section titled "Policy Conditions. . . ." Subparagraph 7 of those conditions is labelled "Cancellation." It provides in part: "Unless, within 60 days of the effective date of this policy, the company [respondent] mails or delivers a notice of cancellation to the named insured [appellant] . . . the company agrees as to each coverage in force on such effective date: . . . (2) to renew this policy for the succeeding policy period, unless the company advises the named insured of its intention not to renew this policy by notice sent to such insured not less than 45 days before the expiration of the current policy period . . . . Such renewal shall be at rates legally in effect at the time thereof. These agreements shall be void and of no effect: (a) if the premium for the policy is not paid when due; . . ." Appellant paid an initial premium of $43.30.

The policy was renewed at successive six-month intervals. It was in effect on October 20, 1968. On that date, appellant, while driving the 1959 Studebaker, was involved in an accident with an uninsured automobile. Respondent denied uninsured motorist coverage and appellant filed the declaratory relief action now before us to test the validity of that denial. At trial, appellant made no contention that he understood or reasonably anticipated that the insurance policy as renewed afforded him uninsured motorist coverage. He proceeded solely on the theory that, as a

matter of law, the written agreement waiving uninsured motorist coverage in the policy as originally written was ineffective to waive that coverage on subsequent renewals of the policy because, by each renewal, the policy was again "issued." The trial court having rejected that theory, appellant repeats his contention on this appeal.[1]

Our analysis of the controlling statute and of decisional law construing it leads us to the conclusion that the judgment of the trial court is correct. At the time of the automobile accident which triggered the litigation here before us, Insurance Code section 11580.2 read in pertinent part: "No policy of bodily injury liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle, shall be issued or delivered in this State to the owner or operator of a motor vehicle, or shall be issued or delivered by an insurer licensed in this State upon any motor vehicle then principally used or principally garaged in this State, unless the policy contains, or has added to it by endorsement, a provision . . . insuring the insured or his legal representative for all sums . . . which he shall be legally entitled to recover as damages for bodily injury from the owner or operator of an uninsured motor vehicle. The insurer and any named insured may by agreement in writing delete the provision covering damage caused by an uninsured motor vehicle."

Here the record establishes without controversy that the exception to uninsured motorist coverage specified in Insurance Code section 11580.2 is present, if that section is read literally. Respondent insurer and appellant named insured, by an agreement in writing, deleted the provision covering damage caused by an uninsured motor vehicle from the policy which is the subject of the litigation now before us. No evidence was presented to the trial court and no contention was made there or is made here that the waiver was ineffective when signed. Neither is there any evidence in the record or any contention made that appellant believed or reasonably anticipated that the written waiver of coverage would not be applicable to renewals of the policy.[2] Thus, whether the policy here in question is treated as "issued" on its original or renewal date, there existed on the date of issue a written agreement intended to waive uninsured motorist coverage.

Nothing in the decisional law construing section 11580.2 persuasively

---

[1] Since the issue was not raised in the trial court and is not asserted on appeal, we do not consider whether the policy here involved includes uninsured motorist coverage by its express although ambiguous terms despite the written agreement of waiver. (Cf. *Utah Home Fire Ins. Co.* v. *McCarty,* 266 Cal.App.2d 892 [72 Cal.Rptr. 460].)

[2] The case at bench thus differs from *Bohlert* v. *Spartan Ins. Co.,* 3 Cal.App.3d 113 [83 Cal.Rptr. 515]; and *Hagar* v. *Elite Ins. Co.,* 22 Cal.App.3d 505 [99 Cal. Rptr. 423], where the insured denied that an agreement signed by him was intended to waive coverage.

indicates that we should, in the case at bench, interpret the waiver provisions of that section as meaning something other than what they say. Canons of construction of section 11580.2 have developed from cases involving the section. ■ In situations of lack of clarity, section 11580.2 must be construed liberally to accomplish the purpose of the uninsured motorist law (*Terzian* v. *California Cas. Indem. Exch.,* 3 Cal.App.3d 90, 97 [83 Cal.Rptr. 255]; *Katz* v. *American Motorist Ins. Co.,* 244 Cal.App.2d 886, 890-891 [53 Cal.Rptr. 669]) i.e., a design to "minimize losses to the people of California who are involved in accidents with uninsured or financially irresponsible motorists." (*Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275].) Where, however, the section is clear in the context of the factual situation involved, the principle of liberal interpretation may not be applied to give a forced construction or one which inserts a requirement not contained in the section. (*Lofberg* v. *Aetna Cas. & Sur. Co.,* 264 Cal.App.2d 306 [70 Cal.Rptr. 269]; *Travelers Indem. Co.* v. *Kowalski,* 233 Cal.App.2d 607, 609-610 [43 Cal.Rptr. 843]; *Grunfeld* v. *Pacific Auto. Ins. Co.,* 232 Cal.App.2d 4, 6 [42 Cal. Rptr. 516].)

The distinction between situations of ambiguity in the statute calling for a liberal construction and those where a forced interpretation must be avoided is illustrated by the specific issues involved in cases which have applied one or the other of the sometimes competing rules of construction.

The rule of liberal construction of Insurance Code section 11580.2 to accomplish the purpose of the uninsured motorist law has been applied: to permit an insurer paying an uninsured motorist claim to assert its subrogation rights against both an uninsured and an insured motorist whose joint negligence caused the injury compensated despite language of the 1959 version of section 11580.2 that the insurer was entitled to be subrogated to the rights of its insured against "the person causing" the injury, there being an ambiguity whether "person" meant singular or plural in view of Insurance Code section 13 stating "singular number includes the plural" (*Mills* v. *Farmers Ins. Exchange,* 231 Cal.App.2d 124 [41 Cal.Rptr. 650]); to construe language of section 11580.2 that a vehicle is uninsured where the carrier denies coverage as encompassing the situation in which insurance on a vehicle "become[s] uncollectible through post-accident insolvency of the insurer" (*Katz* v. *American Motorist Ins. Co.,* 244 Cal.App.2d 886, 889 [53 Cal.Rptr. 669]); to construe an exclusion of the insured's son from coverage by the liability portions of an automobile policy as not excluding him from uninsured motorist coverage (*Valdez* v. *Federal Mut. Ins. Co.,* 272 Cal.App.2d 223 [77 Cal.Rptr. 411]); to extend uninsured motorist coverage to an automobile policy originally issued in Arizona which, pursuant to Arizona law, did not include the coverage

but which was renewed without an agreement waiving coverage after the insured had become a resident of California and the insured automobile was principally used in this state (*Modglin* v. *State Farm Mut. Automobile Ins. Co.*, 273 Cal.App.2d 693 [78 Cal.Rptr. 355]); and to hold that the insurer's statutory defense to uninsured motorist coverage where the insured prosecutes an action to judgment against a person who "might be legally liable for the bodily injury" was not present where the insured entered into a stipulated judgment with an uninsured motorist which, by its terms, permanently enjoined the insured from enforcing the judgment "except for such rights as [the insured] may have" in a bankruptcy proceeding filed by the uninsured motorist (*Terzian* v. *California Cas. Indem. Exch.*, 3 Cal.App.3d 90, 95 [83 Cal.Rptr. 255]).

The rule precluding forced construction of section 11580.2 to impose liability for uninsured motorist coverage upon the insurer has been applied: to uphold the statutory exclusion of coverage while the insured occupies an automobile not covered by his policy but which is insured by a different policy containing uninsured motorist coverage (*Kirby* v. *Ohio Cas. Ins. Co.*, 232 Cal.App.2d 9 [42 Cal.Rptr. 509]) despite the fact that maximum coverage under the insured's own policy is greater than that afforded by the policy on the occupied vehicle (*Darrah* v. *California State Automobile Assn.*, 259 Cal.App.2d 243 [66 Cal.Rptr. 374]); to bar coverage pursuant to the statute where without the consent of the insurer the insured prosecuted his claim to judgment against the uninsured motorist despite lack of prejudice to the insurer because of an offer to assign the judgment to it (*Travelers Indem. Co.* v. *Kowalski*, 233 Cal.App.2d 607 [43 Cal.Rptr. 843]; and to enforce the one-year statute of limitations on presentation of claims imposed by section 11580.2 despite the minority of the claimant (*State Farm etc. Ins. Co.* v. *Superior Court*, 232 Cal.App.2d 808 [43 Cal. Rptr. 209]), the absence of the uninsured motorist from California (*Pacific Indem. Co.* v. *Ornellas*, 269 Cal.App.2d 875 [75 Cal.Rptr. 608], or the occurrence of the accident giving rise to the claim in a state with a longer statute of limitations (*Firemen's Ins. Co.* v. *Diskin*, 255 Cal.App.2d 502 [63 Cal.Rptr. 177]).

The principle against forced construction of Insurance Code section 11580.2 has been utilized in four cases involving the issue of the sufficiency of a written agreement waiving uninsured motorist coverage. In *Weatherford* v. *Northwestern etc. Ins. Co.*, 239 Cal.App.2d 567 [49 Cal.Rptr. 22], a policy of automobile liability insurance issued to a closely held corporation included as named insureds the corporation and two of its officers, husband and wife. The written waiver of uninsured motorist coverage was signed by the husband alone. While the policy was in force, the husband

was killed in an automobile accident involving an uninsured motorist. Section 11580.2, as it then read, provided that uninsured motorist coverage might be waived by the written agreement of "any named insured." Construing the statute to mean precisely what it said and not to be susceptible of the interpretation that "any named insured" meant "all named insureds," the Court of Appeal held the waiver of coverage to be valid. In *Myers* v. *National Automobile & Cas. Ins. Co.,* 252 Cal.App.2d 599, 600-601 [60 Cal.Rptr. 743], the insured, prior to applying for insurance, discussed uninsured motorist coverage with the insurer's agent and determined not to obtain the coverage because "it wasn't worth the premium." He signed a written application for automobile insurance on a form which included the printed letters "UM" understood by the insured to mean uninsured motorist coverage followed by the word "nil." The policy excluded uninsured motorist coverage. Emphasizing that it was the intent of both the insurer and the insured that the signature upon the application would signify waiver of uninsured motorist coverage, the Court of Appeal held that the application and policy read together constituted a written agreement to waive coverage sufficient to satisfy the statute. A similar result emphasizing intent of the parties was reached in *Pechtel* v. *Universal Underwriters Ins. Co.,* 15 Cal.App.3d 194 [93 Cal.Rptr. 53]. In *Holland* v. *Universal Underwriters Ins. Co.,* 270 Cal.App.2d 417 [75 Cal.Rptr. 669], the insured executed an application for insurance and affixed a second signature to the application below a paragraph reading: "In consideration of the issuance of this policy without an additional premium charge, I hereby request that Uninsured Motorist Coverage not be added to my liability policy: . . ." The policy was delivered with an endorsement eliminating uninsured motorist coverage. The Court of Appeal rejected the insured's agreement that the waiver of coverage failed to satisfy the requirements of section 11580.2 because it was not encompassed in a single writing. It stated: "There is no magic in having all signatures on the same document." (270 Cal.App.2d at p. 420.)

■ *Weatherford's* ruling that the waiver requirements of section 11580.2 are to be construed as meaning what they say, *Myers'* and *Pechtel's* holdings that a written waiver is to be found from the intent of the parties in affixing their signatures to pertinent documents, and *Holland's* rejection of the magic of having all signatures on one paper, considered together, require that we hold in the case at bench that appellant, by signing the waiver of uninsured motorist coverage at the time the policy was first issued, waived that coverage on all renewals of the policy. Section 11580.2 requires only that no policy of automobile liability insurance be issued without uninsured motorist coverage unless that coverage has been waived by an agreement in writing. Here it is undisputed that there is

such an agreement and no contention that the agreement was intended or reasonably anticipated to be effective only for the original policy term. Under these circumstances, to hold that a new agreement must be executed each time the policy is renewed would be to add a requirement to the statute that the Legislature did not include in it and to construe the waiver more narrowly than intended by the parties. There is "no magic" in repeating the written waiver at the time of each renewal of the policy where the waiver is intended to be effective so long as the policy is effective.

The authorities argued by appellant are not persuasive. He relies primarily upon *Modglin* v. *State Farm Mut. Automobile Ins. Co., supra,* 273 Cal.App.2d 693, citing it for the proposition that an insurer issues an automobile policy each time it renews it. *Modglin* is distinguishable from the case at bench by the vitally significant fact that in *Modglin* there was no waiver of uninsured motorist coverage. There, the policy had originally been issued in Arizona, a state not requiring uninsured motorist coverage, to a resident of that state covering an automobile used principally in Arizona. The insured moved to California and the automobile was then used principally in this state. The policy was renewed after the insured moved to California. The Court of Appeal rejected the insurer's argument that uninsured motorist coverage was not required because the policy was initially issued in Arizona. It held that the coverage was provided by the policy, emphasizing that the insured vehicle was principally used in California. (273 Cal.App.2d at p. 700.) *Modglin* stands for the proposition that an automobile policy, wherever originally issued, must conform in its coverage to California law when it is renewed after the insured has become a resident of California and the principal use of the insured vehicle is in this state. It does not, as contended by appellant, hold that a written waiver of uninsured motorist coverage intended to be effective so long as the policy is effective becomes void upon renewal of the policy.

Appellant relies also upon a statement in Eisler, California Uninsured Motorist Law Handbook (California Law Book Co. 1969) page 30, to the effect that uninsured motorist coverage may be deleted from a renewed automobile policy only if there is a new written agreement of waiver at the time of renewal. The statement is supported by citation to *Aetna Cas. & Surety Co.* v. *Superior Court,* 233 Cal.App.2d 333 [43 Cal.Rptr. 476], and to an "arbitrator's decision." With due respect to the generally scholarly work of Mr. Eisler, *Aetna* does not, by holding or dictum, stand for the proposition for which it is cited and does not so much as involve the problem. We find the text's reliance upon an "arbitrator's decision," unaccompanied by the reasoning of that decision, similarly unpersuasive.

Finally, appellant argues that an amendment to section 11580.2 in 1969, which specifically provides that the written agreement of waiver of uninsured motorist coverage may be made "prior to or subsequent to the issuance or renewal of a policy," compels the conclusion that the statute, prior to its amendment, denied the efficacy of a written waiver given at the time of original issue of the policy once the policy was renewed. Granted that legislation must be construed as intended to accomplish some purpose, the intent of the 1969 amendment to Insurance Code section 11580.2 seems to have been that of avoiding an unnecessary confusion in application of the statute (see Eisler, *supra*) rather than that of changing the preexisting law. (Review of Selected 1969 Code Legislation (Cont. Ed. Bar) p. 143.)

We thus conclude that the validity of a written agreement of waiver of uninsured motorist coverage given at the time of the original issue of an automobile policy, after renewal of the policy is to be determined not as a matter of law but by the intent with which the waiver is given. Where, as here, there is no contention by the insured that the waiver was not intended or reasonably anticipated by him to be ineffective on renewals of the policy, it must be held validly to waive uninsured motorist coverage when the policy is renewed. Any other result would be contrary to the wording of Insurance Code section 11580.2. Any other result would give a windfall to a purchaser of "cheap" insurance who received exactly the coverage he desired—a windfall which in part at least must inevitably come from the pockets of purchasers who pay full premium for insurance including the coverage which appellant seeks as an afterthought and for nothing.

The judgment is affirmed.

Wood, P. J., and Clark, J., concurred.