[Civ. No. 28559. First Dist., Div. Two. Oct. 19, 1972.]

JOSEPH A. R. LeCLAIR, Plaintiff and Respondent, v.
ALLSTATE INSURANCE COMPANY, Defendant and Appellant.

## COUNSEL

Ropers, Majeski, Kohn, Bentley & Wagner and Michael J. Brady for Defendant and Appellant.

Danaher, Gunn & Klynn and Charles A. Knell for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—This is an appeal by Allstate Insurance Company (hereafter insurer) from a declaratory judgment determining that the uninsured motorist coverage in the automobile liability policy issued to J. A. R. LeClair (hereafter insured) had not been waived. The insurer contends that the insured's initial written waiver remained in effect even after the insured instructed the insurer's agent to increase the protection and liability afforded by the policy, commensurate with the insured's changed economic and professional status.

The record reveals the following facts, substantially as found by the trial court: In August 1964, the insured was a dental intern, newly arrived from Ohio, who asked the insurer's agent, Mr. Vais, to provide a "bare-bones" policy, as the insured could not afford to purchase greater coverage. Vais provided the insured with the minimum $10,000/$20,000 coverage and explained that the insured could sign the written waiver of uninsured motorist coverage to save the additional cost of that premium. The insured did so.

In April 1965, the insured telephoned Vais and explained that he was about to engage in the private practice of dentistry and wanted Vais to re-write and revise his automobile insurance protection accordingly. At this time, the insured was unable to afford greater protection. Vais had "binding authority" to make changes and knew of the insured's changed circumstances as he carried a number of other policies for the insured, including the workmen's compensation and liability policies for the insured's dental office.

During this discussion with Vais, uninsured motorist coverage was not discussed; only bodily injury liability was specifically mentioned. However, the insured did not intend to limit the re-writing and revision of his policy to only the bodily injury coverage, and depended on Vais to re-write the policy to provide the greater protection required by a dentist in private practice. Vais understood that the insured wanted to increase his protection and liability.

As a result of the discussion, the insured's bodily injury liability coverage was increased to $100,000/$300,000, but the records of the insurer indicated no uninsured motorist coverage. After the insured's 1966 accident with an uninsured driver, Vais expressed surprise that the deletion of uninsured motorist coverage initiated by the insured's August 1964 waiver was still a part of the policy and apologized to the insured for the error.

The Legislature has declared it to be the public policy of this state that no automobile liability insurance policy shall fail to include uninsured motorist coverage unless the insurer and the named insured "by agreement in writing delete the provision covering damage caused by an uninsured motor vehicle" (Ins. Code, § 11580.2, subd. (a)). ■ This statute must be liberally construed to carry out its objective of providing compensation for those injured through no fault of their own (*Allstate Ins. Co. v. Smith*, 9 Cal.App.3d 898 [88 Cal.Rptr. 593]). ■ Because the provision of uninsured motorist coverage is a matter of public policy, a claim of waiver is not to be determined simply by reference to the rules that courts otherwise apply to determine the intent of the contracting parties (*Cali-*

*fornia Cas. Idem. Exch.* v. *Steven,* 5 Cal.App.3d 304, 307 [85 Cal.Rptr. 82]).[1] The language of an effective written waiver must meet the test of clarity and specificity as to the coverage waived. In *Hagar* v. *Elite Ins. Co.,* 22 Cal.App.3d 505 [99 Cal.Rptr. 423], the court said at pages 510 and 511: "The court in *Bohlert* v. *Spartan Ins. Co.* (1969) 3 Cal.App.3d 113, 119 [83 Cal.Rptr. 515], examined similar language in a purported deletion agreement and found it insufficient. The *Bohlert* court said: 'Except for the bare—and, under the circumstances, wholly uninformative—reference to Insurance Code section 11580.2, the language providing that "the policy shall afford no coverage for damage caused by an uninsured motor vehicle" does not show the prospective insured that it means damage incurred by *him*; he could readily construe it to mean coverage for damage caused to *others* by an "uninsured motor vehicle" for whose operation he was responsible (coverage which would not have interested Bohlert if there were no such vehicle other than the motorcycle which he was presently covering against liability to others). Because the language is ambiguous to this extent, it does not—on its face—meet the standard that an agreement excluding uninsured motorist coverage must be "conspicuous, plain and clear" to constitute an "effective waiver" thereof [citation].'" (Italics in original.)

■    Here, the written waiver was introduced into evidence; neither the parties nor the court below have been able to locate it. In any event, there is nothing in the record, including the purported stipulation, to indicate that the insured signed the waiver after an explanation that met the requirements of *Hagar* and *Bohlert, supra.* Thus, the instant case is readily distinguishable from *Pechtel* v. *Universal Underwriters Ins. Co.,* 15 Cal. App.3d 194 [93 Cal.Rptr. 53], where it was clear from the insured's own testimony that he knew what coverage he was deleting when he signed the agreement therein involved.

Even assuming a valid waiver, here the crucial factor is the intent with which the waiver was given (*Robinson* v. *State Farm Mut. Auto. Ins. Co.,* 23 Cal.App.3d 953, 961 [100 Cal.Rptr. 565]).

In the instant case, unlike *Robinson, supra,* there is sufficient evidence that the insured did not intend or reasonably expect that the waiver would apply after his April 1965 instructions to Vais. The insured signed the written waiver to save an additional $4 , as he was earning $69 a week as

---

[1]*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.,* 3 Cal.3d 434, 442 [91 Cal.Rptr. 6, 476 P.2d 406], cited by the insurer for the first time at oral argument, is distinguishable as it relates to an indemnity agreement construed pursuant to Civil Code section 2778.

an intern, to bring the annual premium for his coverage down to $74. As he prepared to enter private practice, the insured indicated to the agent Vais that he wanted to revise and rewrite his automobile insurance policy to increase his protection and liability commensurate with his improved economic status as a practicing dentist. Vais understood, and after the 1966 accident, expressed surprise that the waiver was still a part of the insured's revised policy. Thus, there was uncontroverted evidence that the insured intended and reasonably anticipated that the waiver would be effective only for the original policy term.

Our interpretation of the statute, as it read at the time here pertinent, is supported by the recent amendments of subdivision (a) of Insurance Code section 11580.2, set forth below,[2] which are not applicable to the instant policy. These amendments specifically provide that deletions of uninsured motorist insurance "shall apply" while the policy is in force and "continue to be" binding with respect to continuations, renewals, replacements or reinstatements of the policy. It is significant that the Legislature recognized the necessity of such additional provisions to keep the waivers alive under circumstances similar to those in the instant case. Prior to the amendments, the controlling factor had to be the intent with which the waiver was entered into. Here, the court's finding on intent is sufficiently sustained by the evidence.

Affirmed.

Kane, J., and Rouse, J., concurred.

---

[2]"The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle *(1) completely, or (2) with respect to a natural person or persons designated by name when operating a motor vehicle. Either of* such deletions by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply *while such policy is in force, and shall continue to be so binding with respect to any continuation, renewal or replacement of such policy by the named insured, or with respect to reinstatement of such policy within 30 days of any lapse thereof.*" (Added by Stats. 1971, ch. 1564, § 4.)