[Civ. No. 49444. Second Dist., Div. Three. July 28, 1977.]

ALFRED BORDERS, Plaintiff and Appellant, v.
GREAT FALLS YOSEMITE INSURANCE COMPANY,
Defendant and Respondent.

## COUNSEL

Cohen & Steinbrecher and Leonard Sacks for Plaintiff and Appellant.

Revere, Citron & Wallace, Joel F. Citron and Frank Revere for Defendant and Respondent.

## OPINION

**POTTER, J.**—This is an appeal by plaintiff Alfred Borders from a judgment declaring that a policy of automobile liability insurance purchased by plaintiff from defendant Great Falls Yosemite Insurance Company did not provide uninsured motorist coverage in respect of an accident occurring on June 20, 1973. The matter was submitted to the court upon stipulated facts. Since such stipulation is short, we quote it verbatim:

"The Plaintiff is ALFRED BORDERS. ALFRED BORDERS purchased a policy of liability insurance from GREAT FALLS INSURANCE COMPANY, Policy No. GCM 168601 for a policy period from June 20, 1972, to June 20, 1973. The normal expiration date of said policy would be 12:01 a.m.

"That ALFRED BORDERS signed a Waiver of Uninsured Motorist Coverage at the time he purchased his policy of insurance. That there is no dispute as to the validity of the Waiver or the policy.

"At approximately 9:00 a.m., June 20, 1973, ALFRED BORDERS was involved in an auto vs. motorcycle collision with an uninsured motorist. That said accident occurred approximately nine hours after the natural expiration period of said policy.

"That the natural expiration period of said policy was 12:01 a.m., June 20, 1973. On May 8, 1973, the Defendant gave notice of intention not to renew said policy to the legal owner thereof, HOUSEHOLD FINANCE CORPORATION. That the Defendant failed to give proper notice of their intention not to renew said policy to ALFRED BORDERS, in the manner set forth by the Insurance Code.

"That on January 15, 1974, GREAT FALLS INSURANCE COMPANY, gave proper notice under the Insurance Code to ALFRED BORDERS of their intention not to renew Policy No. GCM 168601, effective January 27, 1974."

The trial court made findings of fact in accordance with the stipulation, and from these facts the court concluded that upon the failure of defendant to give proper notice of nonrenewal, "the term of the subject policy, No. GCM 168601, was extended, however, said extended policy likewise failed to contain uninsured motorist coverage due to the express waiver of the Plaintiff, ALFRED BORDERS."

At the time the policy was purchased and at the time of the loss, Insurance Code section 11580.2,[1] subdivision (a), required all liability insurance policies issued or delivered in this state to contain an uninsured motorist provision but permitted deletion by agreement in writing as follows: "The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle (1) completely, or (2) with respect to a natural person or persons designated by name when operating a motor vehicle. Either of such deletions by any named insured shall be binding upon every insured to whom such policy or endorsement provisions apply while such policy is in force, and shall continue to be so binding with respect to any continuation, renewal, or replacement of such policy by the named insured, or with respect to reinstatement of such policy within 30 days of any lapse thereof. . . ."

The above quoted language was added in 1971. Prior to that time, the pertinent portion of subdivision (a) read simply: "The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle. Such deletion by any

---

[1]All references in this opinion to code sections are to the Insurance Code unless otherwise stated.

named insured shall be binding upon every insured to whom such policy or endorsement provisions apply."

There is no legislative history of the 1971 amendment except the prior decisional law and the successive forms of Assembly Bill No. 2499 (the amending statute) prior to its adoption. In 1969 in *Modglin* v. *State Farm Mut. Automobile Ins. Co.,* 273 Cal.App.2d 693, 700 [78 Cal.Rptr. 355], it was held that the renewal of a policy originally issued in Arizona to residents of that state whose cars were used therein after both the insured and the vehicles were brought to California constituted "issuance" or "delivery" of a policy within the meaning of Insurance Code section 11580.2, making obligatory uninsured motorist coverage. Arizona had no uninsured motorist coverage requirement, and there was no waiver.

Two trial court decisions subsequent to *Modglin* dealt with the problem of renewal of policies originally issued in California with an express waiver and reached opposite results as to the continued effect of the waiver depending upon the intent of the insured. (See *Robinson* v. *State Farm Mut. Auto. Ins. Co.,* 23 Cal.App.3d 953 [100 Cal.Rptr. 565], and *LeClair* v. *Allstate Ins. Co.,* 28 Cal.App.3d 185 [103 Cal.Rptr. 35], in which these trial court decisions were affirmed.)[2]

The apparent purpose of Assembly Bill No. 2499 was to avoid the effect of *Modglin* insofar as it might be construed as requiring the execution of a new waiver every time the policy was renewed, and to avoid the uncertainty inherent in having the effect of renewal depend upon the subjective intent of the insured. The first form of the bill permitted valid written waivers to be continued in effect under limited circumstances. The condition stated was: "*In any case where the insurer and the named insured have agreed to such deletion, the insurer shall, with each premium renewal notice sent to a named insured enclose a statement to the named insured notifying him that the policy shall continue to exclude uninsured motorist coverage unless the named insured notifies the insurer within a reasonable time that he desires such coverage to be included in the policy. . . .*" (Italics in original.)

Before adoption, however, the above quoted language was deleted and in its place the present language was substituted. This eliminated any requirement that the insured's attention be drawn to the continued exclusion and made valid waivers executed by "any named insured"

---

[2]The Court of Appeal decisions in these matters are not part of the legislative history of the 1971 amendment, having been decided in 1972.

applicable "with respect to any continuation, renewal or replacement of such policy by the named insured . . . ."

Section 11580.2 was further amended by subsequent legislation which was placed in effect after plaintiff purchased the policy herein but prior to the renewal and loss. Effective January 1, 1973, subdivision (a) was amended to make the existing text paragraph (1) and to add a paragraph (2) as follows:

"(2) The agreement specified in paragraph (1) shall be in the following form:

" 'The California Insurance Code requires an insurer to provide uninsured motorists coverage in each bodily injury liability insurance policy it issues covering liability arising out of the ownership, maintenance, or use of a motor vehicle. Such section also permits the insurer and the applicant to delete such coverage completely or with respect to one or more natural persons designated by name when operating a motor vehicle. Uninsured motorists coverage insures the insured, his heirs, or legal representatives for all sums within the financial responsibility limits which such person or persons are legally entitled to recover as damages for bodily injury, including any resulting sickness, disease, or death, to him from the owner or operator of an uninsured motor vehicle not owned or operated by the insured.'

"Such agreement may contain additional statements not in derogation of or conflict with the foregoing. The execution of such agreement shall relieve the insurer of liability under this section while such agreement remains in effect."

The statute adopting the amendment, however, contained a saving clause as follows:

"SEC. 3. The amendments to subdivision (a) of Section 11580.2 of the Insurance Code enacted at the 1972 Regular Session shall not affect the validity or binding force of any agreement executed pursuant to such section prior to the effective date of such amendments." (Stats. 1972, ch. 952, § 3, p. 1728.)

The stipulation of facts herein did not include the form of the waiver. However, the findings of fact (proposed by defendant) include as a conclusion of law a statement that the policy "does, by its terms, contain

an express waiver by the Plaintiff, ALFRED BORDERS, of uninsured motorist coverage, both for the policy period from June 20, 1972, to June 20, 1973, and any subsequent periods during which said policy was in effect by operation of law."

Plaintiff has attached, as an appendix to appellant's brief, a copy of an application for insurance executed by plaintiff containing an "uninsured motorist waiver" in the following language:

"I, the undersigned Applicant for Insurance, do not want to pay the additional premium for, nor do I desire, uninsured motorist coverage. I agree (1) no present or future policies or endorsements, nor Section 11580.2 of the California Insurance Code nor any other law, shall afford any uninsured motorist coverage insuring me or anyone for any damages I or anyone may be entitled to recover for bodily injury or wrongful death from the owner or operator of an uninsured motor vehicle or from anyone else in connection with an uninsured motor vehicle, (2) any provisions for any such coverages, whether express or implied by law or otherwise are hereby deleted from all present and future policies and endorsements.

"These deletions and agreements herein bind me and every insured to whom any policy or endorsement applies, and everyone otherwise qualifying for coverage.

"I HAVE READ AND UNDERSTAND THE FOREGOING WAIVER AND AFFIX MY SIGNATURE HERETO WITH THE FULL KNOWLEDGE THAT I AM WAIVING PROTECTION UNDER UNINSURED MOTORIST COVERAGE."

Defendant has not denied the authenticity of the application form but objects to it being considered part of the record.

### Contentions

Plaintiff contends that (1) "the policy was renewed by operation of law," not "by the named insured"; consequently, the effect of the waiver was not continued under the provisions of section 11580.2, subdivision (a); and (2) at the time such renewal occurred (June 20, 1973), section 11580.2, subdivision (a)(2), was applicable and not complied with. Plaintiff argues that on both bases, the policy as renewed provided uninsured motorist coverage.

Defendant controverts both contentions, claiming that (1) defendant's failure to give notice of nonrenewal resulted in an extension of the policy on the same terms and conditions, that is, without uninsured motorist coverage; and (2) by virtue of the savings clause in the adopting statute, section 11580.2, subdivision (a)(2) is inapplicable to the waiver previously given.

## Discussion

We agree with the contentions of defendant. The renewal which resulted from failure to give notice of nonrenewal was merely an extension of the policy upon the same terms and conditions, if accepted by the named insured. Such renewal was, therefore, a "continuation, renewal, or replacement of such policy by the named insured" continuing the waiver in effect. Such binding force of the waiver was unaffected by the 1973 amendment to section 11580.2 changing the required form for waivers.

### The Waiver Was Continued
### in Effect by the Renewal

The starting point of any discussion of the effect of defendant's failure to give notice of nonrenewal must be a consideration of sections 660 and 663. ■ Section 663, as in effect on June 20, 1973, provided in pertinent part: "No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least 20 days' advance notice of its intention not to renew."

In *State Farm Mut. Auto Ins. Co.* v. *Brown,* 40 Cal.App.3d 385, 394 [115 Cal.Rptr. 213], the court stated that this language "imports that an insurer's failure to give such notice operates to effect an automatic renewal of the policy, beyond its renewal-expiration date and irrespective of the insured's nonpayment of the renewal premium payable on that date." Assuming such to be the case, it is necessary to ascertain what is meant by "renewal" as used in section 663. That term was defined in Insurance Code section 660, subdivision (e), as follows: " 'Renewal' or 'to renew' means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; . . ."

Two things are significant in this definition: (1) the renewal required by section 663 was in fact an offer to renew and (2) the terms of the offer could be either a replacement policy or an extension of the term of the existing policy. It is apparent that the act of the insurer in issuing and delivering a replacement policy or a notice extending the term could not operate to obligate the insured to pay a premium for a further term and consequently that it could not operate to continue in effect the insurance in the absence of some action on the part of the insured accepting such coverage. "In order for the renewal of an insurance policy to be effective, there must be an offer to renew and an acceptance thereof. [Fn. omitted.]" (17 Couch, Insurance (1967) § 68.30, p. 676.) "The renewal of a policy is a new contract of insurance as regards the requirements of mutual assent offer and acceptance, and new consideration. [Fns. omitted.]" (13A Appleman, Insurance Law and Practice (1976) § 7641, pp. 387-388.)

Also pertinent is the meaning of "renewal" and "to renew" in respect of policies of insurance generally. 36A, Words and Phrases, under "to renew" and "renewal" collects cases from jurisdictions throughout the United States with respect to the meaning of these terms. As applied to contracts of insurance, the following cases are representative. There are no contrary authorities. In *Schock* v. *Penn Tp. Mut. Fire Ins. Ass'n.* (1942) 148 Pa.Super. 77 [24 A.2d 741, 743], the court said: ". . . A renewal of a policy of fire insurance is, in effect, a new contract of insurance, and, unless otherwise expressed, *on the same terms and conditions as the original policy.* Hartford Fire Ins. Co. v. Walsh, 54 Ill. 164, 5 Am.Rep. 115, 116; Bickford v. Aetna Ins. Co., 101 Me. 124, 63 A. 552, 555, 8 Ann.Cas. 92; 29 Am.Jur., Insurance, § 258, p. 247; 32 C.J. p. 1144, § 251; 6 Couch on Insurance, § 1363 et seq." (Italics added.)

In *Martin* v. *American Ins. Co.* (1929) 198 Wis. 214 [223 N.W. 437, 439], the court said: ". . . . What was meant by the directions to renew the policy, and the only understanding that could have been entertained by the agent from such directions, was that Mrs. Martin desired *the same insurance, the same character of coverage that had been afforded to her by the terms of the old policy. . . ."* (Italics added.)

In *Springfield Fire & Marine Ins. Co.* v. *Hubbs-Johnson M. Co.* (Tex. 1931) 42 S.W.2d 248, 252, the court said: ". . . . 'The very request to renew a policy,'* says the court, in Orient Ins. Co. v. Wingfield, 49 Tex. Civ. App. 202, 108 S. W. 788, 792, *'implies that the new policy shall be exactly like and similar to the old policy.'* The terms of the contract relied upon to

show a renewal of the existing policy disclose provisions materially differing from those of the existing policy, in that the new contract showed an agreement for insurance upon a different risk and in a larger amount than the old policy. A contract to write such a policy cannot, by any sound process of reasoning, be held to constitute an agreement for the renewal of the existing policy." (Italics added.)

It appears that the term has had the same meaning in California law. In *Kemmerer Eng. Co.* v. *Continental Cas. Co.,* 253 Cal.App.2d 188 [61 Cal.Rptr. 94], this court held that an insurer had refused to renew when the renewal it offered was on different terms. The court said *(id.,* at p. 191): "The trial court reasonably concluded that the offer to renew, conditioned as it was upon the acceptance by the insured of materially new and different terms, amounted to a refusal to renew the existing policy of insurance, and, that it was a 'refusal to renew' within the meaning of paragraph 12."

By permitting the insurer to renew by delivering a "notice extending the term of a policy beyond its policy period or term," section 660, subdivision (e), acknowledges the rule that an obligation to renew is an obligation to make the same coverage available on the same terms for an additional period. Legislation to make such renewal extend additional coverage not provided in the original term would be contrary to the intent expressed in sections 660 and 663.

■ Plaintiff seeks to find that contrary intent expressed in the provisions of section 11580.2, subdivision (a), which continues the effect of waivers with respect to continuations, renewals or replacements "by the named insured." We discern no such intent thereby expressed. Waiver agreements are required to be made initially by "the insuror and any named insured." In the case of renewals involving the concurrence of the named insured, he can be protected from indefinite extension of noncoverage by declining to accept renewals, demanding instead and paying for a new policy extending uninsured motorist coverage. In a case where coverage could be continued by someone other than the named insured, as by a legal owner at the cost of the insured, a new waiver is required because otherwise the named insured has no opportunity to procure uninsured motorist coverage. Where, however, the continuation entails the consensual act of the named insured, he can obtain such coverage for any future loss if it is desired.

As above pointed out, a renewal pursuant to sections 660 and 663, in order to become effective to continue coverage, requires the assent of the insured. This is made more apparent by the present form of these sections. Section 660 now defines renewal as meaning "to continue coverage for an additional policy period upon expiration of the current policy period of the policy." In light of this new definition of renewal, section 663 now provides that failure to send a notice of nonrenewal results in an "offer" of "renewal of a policy, contingent upon payment of premium as stated in the offer." Though the current statute clarifies the matter, it is apparent that the situation was identical under the prior form and that the renewal made obligatory by virtue of section 663 has at all times been one requiring the insured's agreement. It was, therefore, a renewal "by the named insured."

The history of amendment of Assembly Bill No. 2499 does not support a contrary conclusion. In the original form, section 11580.2, subdivision (a), required that premium renewal notices "enclose a statement to the insured notifying him that the policy shall continue to exclude uninsured motorist coverage" in order for the waiver to continue in effect. The deletion of this provision signified merely that the Legislature did not consider it necessary to remind insureds of the waiver upon the occasion of each renewal. There is no basis for plaintiff's assumption that the inclusion in the enactment as adopted of the reference to renewal "by the named insured" was intended as a substitute for such a notice. Obviously renewal by the named insured does not constitute such a substitute. Being advised of the necessity to pay a renewal premium in no way reminds the named insured that he does not have uninsured motorist coverage. Consequently, the language adopted cannot logically be construed as having the same intended purpose as that which was deleted from the earlier form of the statute.

Such being the case, it is inappropriate to read section 11580.2, subdivision (a), as intended to override the provisions of sections 660 and 663 which give the insured the right to a renewal or extension of the term *upon the same terms and conditions* if he so chooses. Section 11580.2 does not indicate the Legislature's intent to afford the insured the right to demand additional coverage for the renewed or extended term as a result of the insurer's failure to give notice of nonrenewal.

■ In so holding, we are not unmindful of the policy of this state to foster and encourage the furnishing of uninsured motorist coverage pursuant to which "the *entire* automobile financial responsibility law

must be liberally construed to foster its main objective of giving 'monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.'. . ." (*Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142, 153 [23 Cal.Rptr. 592, 373 P.2d 640]; see also *Metz* v. *Universal Underwriters Ins. Co.,* 10 Cal.3d 45, 53 [109 Cal.Rptr. 698, 513 P.2d 922].) A corollary of this rule, of course, is that stated in *Dufresne* v. *Elite Insurance Co.,* 26 Cal.App.3d 916, 922 [103 Cal.Rptr. 347, 55 A.L.R.3d 206], where the court said:

"The Legislature has provided a specific method by which the otherwise mandatory uninsured motorist coverage may be excluded. Section 11580.2, subdivision (a), provides in pertinent part: 'The insurer and any named insured, prior to or subsequent to the issuance or renewal of a policy, may, by agreement in writing, delete the provision covering damage caused by an uninsured motor vehicle. . . .' By providing a specific means of deletion, the Legislature intended to limit the manner in which it may be accomplished to that specifically provided. (*Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 136 [22 Cal.Rptr. 682].) An insurer's attempt to exclude uninsured motorist coverage can be effected only if there has been strict compliance with the provision of the law permitting such exclusion. (*Pechtel* v. *Universal Underwriters Ins. Co.,* 15 Cal.App.3d 194, 199 [93 Cal.Rptr. 53]; *Hendricks* v. *Meritplan Ins. Co., supra,* 205 Cal.App.2d 133, 139.)

"An agreement excluding uninsured motorist coverage 'is in the nature of an agreement to exclude from coverage something which would otherwise be included as a matter of law.' (*Utah Home Fire Ins. Co.* v. *McCarty,* 266 Cal.App.2d 892, 895 [72 Cal.Rptr. 460].) 'Only an agreement in writing which amounts to an "effective waiver" of uninsured motorist coverage by the insured will exclude it from a liability policy for which he makes an application. (*Utah Home Fire Ins. Co.* v. *McCarty* (1968) 266 Cal.App.2d 892, 895 [citation].)' (*Bohlert* v. *Spartan Ins. Co.,* 3 Cal.App.3d 113, 118 [83 Cal.Rptr. 515].)"

There are, however, limits to liberal interpretation beyond which forced construction is involved. As was said in *Robinson* v. *State Farm Mut. Auto. Ins. Co., supra,* 23 Cal.App.3d at pages 956-957: "Nothing in the decisional law construing section 11580.2 persuasively indicates that we should, in the case at bench, interpret the waiver provisions of that section as meaning something other than what they say. Canons of

construction of section 11580.2 have developed from cases involving the section. In situations of lack of clarity, section 11580.2 must be construed liberally to accomplish the purpose of the uninsured motorist law (*Terzian* v. *California Cas. Indem. Exch.,* 3 Cal.App.3d 90, 97 [83 Cal.Rptr. 255]; *Katz* v. *American Motorist Ins. Co.,* 244 Cal.App.2d 886, 890-891 [53 Cal.Rptr. 669]) i.e., a design to 'minimize losses to the people of California who are involved in accidents with uninsured or financially irresponsible motorists.' (*Mission Ins. Co.* v. *Brown,* 63 Cal.2d 508, 510 [47 Cal.Rptr. 363, 407 P.2d 275].) Where, however, the section is clear in the context of the factual situation involved, the principle of liberal interpretation may not be applied to give a forced construction or one which inserts a requirement not contained in the section. (*Lofberg* v. *Aetna Cas. & Sur. Co.,* 264 Cal.App.2d 306 [70 Cal.Rptr. 269]; *Travelers Indem. Co.* v. *Kowalski,* 233 Cal.App.2d 607, 609-610 [43 Cal.Rptr. 843]; *Grunfeld* v. *Pacific Auto. Ins. Co.,* 232 Cal.App.2d 4, 6 [42 Cal.Rptr. 516].)"

We conclude that it would be a "forced construction" of section 11580.2, subdivision (a), to construe it so as to override the clear meaning of sections 660 and 663. Consequently, we decline to place such interpretation upon it.

### The Waiver Did Not Have to Be Executed in the Form Specified by the Subsequent Amendment to Section 11580.2, Subdivision (a)

The record is devoid of any evidence concerning the form of the waiver executed at the June 20, 1972, inception of plaintiff's policy except the stipulation "that there is no dispute as to the validity of the Waiver." Plaintiff did, however, contend in his trial brief that "[i]n order to delete uninsured motorist coverage in June of 1973, a new deletion agreement was required to be executed in conformity with section 11580.2(a) in the form provided in sub-section (2)." Though defendant has objected to plaintiff relying upon matters outside the record, it does not challenge the authenticity of the waiver agreement attached to plaintiff's brief. In view of these circumstances and the fact, as heretofore pointed out, that defendant itself incorporated in the findings a reference to the form of the waiver not supported by the stipulation, we have examined the merits of plaintiff's contention in this respect. Having done so, we conclude that the subsequent amendment does not preclude continued effect being given to the waiver upon renewal after the effective date of the amendment. Such being the case, we dispose of

plaintiff's contention on the merits rather than on the basis of the procedural defect.

■ We have held in the preceding segment of this opinion that the binding force of a valid waiver given pursuant to section 11580.2, subdivision (a), includes its being effective to continue the deletion of coverage upon renewal or extension of the policy pursuant to sections 660 and 663. If the effect of the 1973 amendment to section 11580.2, subdivision (a), were to deny such effect, it would be thereby to diminish the binding force of such waiver. The saving clause in the 1972 statute adopting such amendment specifically provides that the amendment "shall not affect the validity *or binding force of* any agreement executed pursuant to such section prior to the effective date of such amendments." (Italics added.) It is thus apparent that the binding effect of the waiver executed by plaintiff prior to the effective date of the amendment is not affected by such amendment and that it was continued in effect by the renewal of the policy.

The judgment is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied September 22, 1977.