**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1897
_____

INDIAN HARBOR INSURANCE CO


v.

F&M EQUIPMENT, LTD,
f/k/a FURNIVAL MACHINERY COMPANY,
                                        Appellant

_____


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Civil Action No. 2-12-cv-01506)
District Judge:  Honorable Petrese B. Tucker

_____


Argued on January 14, 2015

Before:  AMBRO, FUENTES and ROTH, <u>Circuit Judges</u>

(Opinion filed: October 15, 2015)

Thomas M. Peterson, Esquire        **(Argued)**
Deborah E. Quick, Esquire
Morgan, Lewis & Bockius
One Market
Spear Street Tower
San Francisco, CA 94105

                Counsel for Appellant


Joel C. Hopkins, Esquire        **(Argued)**
Saul Ewing
Two North Second Street
Penn National Insurance Tower, 7th Floor
Harrisburg, PA 17101

                Counsel for Appellee

---

O P I N I O N

---

**ROTH**, Circuit Judge:

This case concerns the contractual meaning of the word "renewal." F&M Equipment, Ltd., f/k/a Furnival Machinery Company and Indian Harbor Insurance Company agreed to a ten-year insurance policy that included a promise by Indian Harbor to offer a renewal. At the end of the ten years, Indian Harbor offered a "renewal" contract with

substantially different terms to Furnival, which rejected it. Indian Harbor sought a declaratory judgment that its contract offer constituted a renewal and Furnival counterclaimed for breach of the original contract. The District Court denied Furnival's summary judgment motion, holding that Indian Harbor's offer constituted a renewal because an insurance company need only notify the insured that a policy will change for the later offer of a contract to constitute a renewal. Furnival now appeals. For the foregoing reasons, we will vacate the judgment of the District Court. We conclude that, for a contract to be considered a renewal, it must contain the same, or nearly the same, terms as the original contract.

## I.

In December 2001, Furnival and Indian Harbor agreed to a Pollution and Remediation Legal Liability Policy. The Policy is a seventy-four page document detailing the terms and conditions of the insurance coverage offered by Indian Harbor. The terms and conditions include: (1) $10 million in liability protection; (2) insurance coverage for twelve specific Furnival locations; and (3) a ten-year period of coverage from the purchase date. One of the sites covered by the Policy is the Elizabethtown Landfill Site, which Furnival was obligated to clean up pursuant to a consent decree with the federal government. Indian Harbor knew about the consent decree at the time the Policy was issued. The Policy also includes a separate section for "Endorsements." Endorsement No. 16 lists five reasons for which Indian Harbor may "refuse to offer a renewal extension of coverage," and states that Indian Harbor "shall not cancel nor non-renew this Policy

3

except for the reasons stated above."[1]  It is undisputed that none of the listed reasons for non-renewal occurred.

---

[1] Endorsement No. 16 reads in relevant part:

    I.    The INSURED and the Company agree that the Company may cancel at any time or refuse to offer a renewal extension of coverage for the following reasons:

        a.  the INSURED has made a material misrepresentation . . .[ ; or]

        b.  the INSURED materially breaches . . . ; or

        c.  material failure on the part of the INSURED to comply with Policy terms, conditions, or contractual duties; or

        d.  a material change in the operations or lack of operations performed by the INSURED. . ..

    II.    Furthermore, the INSURED and the Company agree that the Company may refuse to offer a renewal extension of coverage to the INSURED for the following reason:

In 2001, Furnival paid Indian Harbor a $520,498 premium for the Policy and accompanying Endorsements. In June 2006, the parties modified the contract to include Endorsement No. 23, which increased the Policy's limit from $10 million to $14 million for an additional premium of $55,798.

In September 2011, near the end of the initial coverage period, Indian Harbor sought a renewal application from Furnival. On December 30, 2011, Furnival requested that Indian Harbor provide Furnival with "[p]roposed premiums payable and all other relevant terms and conditions for a renewal policy that the named insured is entitled to and allowed to elect under the policy." In late January 2012, Indian Harbor sent Furnival's insurance broker its version of a renewal offer (the Indication of Coverage). The Indication provided $5 million of coverage over a one-year term, and omitted coverage for Elizabethtown, the only previously insured site for which Furnival had made a claim. Unsatisfied with the terms of the Indication, Furnival rejected it and, two days later, requested that Indian Harbor send an offer to

a. loss of reinsurance or a substantial decrease in reinsurance has occurred. . ..

The Company agrees that it shall not cancel nor non-renew this Policy except for the reasons stated above.

All other terms and conditions remain the same.

5

renew under the same terms and conditions as the Policy. On January 31, 2012, Indian Harbor informed Furnival that it would not provide a revised offer. In February 2012, Furnival sent Indian Harbor a notice accepting "the renewal extension that Indian Harbor was obligated to offer under Endorsement No. 16," along with a check for $520,498 to serve as the premium for the renewed Policy. Indian Harbor returned the check and rejected Furnival's request.

On March 23, 2012, Indian Harbor filed a Complaint against Furnival, seeking declaratory judgment on four issues:

> (1) [Indian Harbor] made an offer to renew the Policy as required by Endorsement No. 16;
> (2) Furnival rejected [Indian Harbor]'s offer to renew the Policy, resulting in its termination on December 31, 2011;
> (3) [Indian Harbor] had no obligation to offer to renew the Policy under the same terms and conditions as the expiring Policy; and
> (4) Furnival's attempt to renew the Policy under the same terms and conditions as the expiring Policy is without force and effect.

Furnival filed a counterclaim for breach of contract, and eventually moved for summary judgment.

The District Court denied Furnival's motion. Indian Harbor argued, as it does here, that state law permits an insurance company to renew a policy with different terms than the original policy if notice of the changes is given. The District Court reasoned that Furnival "inadvertently acknowledged" that the "general rule of 'same terms and

6

conditions as contained in the original policy,'" contains an "'unless otherwise expressed' exception."[2] Accordingly, as Indian Harbor undisputedly gave notice of its intent to change the policy, the court held that Indian Harbor satisfied its obligation to renew.

## II.[3]

This Court reviews the district court's denial of summary judgment *de novo*.[4] Summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[5] This Court "exercise[s] plenary review over questions of contract interpretation."[6]

Sitting in diversity, we apply the law of the state in which the case originates, in this case Pennsylvania. "Under Pennsylvania law, an insurance contract is governed by the law of the state in which the contract was made."[7] In Pennsylvania, "[t]he fundamental rule in interpreting the

---

[2] *Indian Harbor Ins. Co. v. F & M Equip. Ltd.*, No. 2:12-CV-01506 PBT, 2013 WL 4405685, at *4 (E.D. Pa. Aug. 15, 2013).

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291.

[4] *Meyer v. CUNA Mut. Ins. Soc.*, 648 F.3d 154, 162 (3d Cir. 2011).

[5] *Id.*

[6] *Great Am. Ins. Co. v. Norwin Sch. Dist.*, 544 F.3d 229, 243 (3d Cir. 2008).

[7] *Meyer*, 648 F.3d at 162 (citing *Crawford v. Manhattan Life Ins. Co.*, 221 A.2d 877 (Pa. Super. Ct. 1966)).

meaning of a contract is to ascertain and give effect to the intent of the contracting parties."[8] Where writing is "clear and unequivocal," the intent of the parties is found "in the writing itself . . .. A contract contains an ambiguity if it is reasonably susceptible of different constructions and capable of being understood in more than one sense."[9] Specifically, insurance contracts must be interpreted in light of the insured's reasonable expectations.[10] If an ambiguity is otherwise unresolvable, inferences should be drawn against the insurance company, the author of the policy.[11]

We must determine what the parties meant when they agreed that Indian Harbor would not "refuse to offer a renewal extension of coverage."[12] Furnival argues that a "renewal" requires a new contract that contains the same material terms as, or substantially similar terms to, the original contract.[13] Indian Harbor responds that such a rule

---

[8] *Murphy v. Duquesne Univ.*, 777 A.2d 418, 429 (Pa. 2001).

[9] *Id.*

[10] *Bensalem Twp. v. Int'l Surplus Lines Ins. Co.*, 38 F.3d 1303, 1308-09 (3d Cir. 1994).

[11] *Meyer*, 648 F.3d at 163.

[12] Furnival and Indian Harbor argue that the phrases "renewal extension" and "renewal extension of coverage" respectively have independent meanings that happen to align with their interpretations of the word "renewal." We do not believe that the additional words provide useful clues as to the meaning of the operative word "renewal."

[13] *See, e.g.*, *Borders v. Great Falls Yosemite Ins. Co.*, 72 Cal. App. 3d 86, 97 (Cal. Ct. App. 1977); *Gaston-Lincoln Transit, Inc. v. Maryland Cas. Co.*, 201 S.E.2d 211, 216 (N.C. Ct. App. 1973). Indian Harbor characterizes Furnival's argument

would lock it into the same contract for eternity, and that cannot be what the parties intended. For its part, Indian Harbor argues that a renewal need only be any offer of a new contract, so long as advance notice is provided for any changed terms and the terms are commercially reasonable. Furnival responds that this argument renders the promise of renewal illusory, because Indian Harbor is always free to offer a new contract, and its reasoning allows it to offer a "renewal" that is of no use to Furnival.

Case law on this subject is quite thin. Neither we nor the Pennsylvania courts have considered the meaning of renewal in this context. In *Flanagan v. Fidelity Bank*, the Superior Court of Pennsylvania considered whether a certificate of deposit (CD) that automatically renewed after its expiration continued accruing interest at its original rate.[14] The court held that, because the CD renewed, the original interest rate applied, rather than either zero interest or market rates. In so holding, the court relied on Black's Law Dictionary: "To 'renew' a contract means to begin again or continue in force the old contract."[15] But that court did not consider whether modifications to a contract would render it a nonrenewal. If the bank had notified the customer that the CD would change to a new market rate upon its expiration,

---

as requiring a renewal to have identical terms. In its brief, however, Furnival uses the phrases "same material terms" and "substantially the same terms" interchangeably, relying on cases that use both. For the purpose of our analysis, we treat them as separate concepts.

[14] 652 A.2d 930, 932 (Pa. Super. Ct. 1995).

[15] Black's Law Dictionary, 5th ed., *quoted in Flanagan*, 652 A.2d at 932.

there is no evidence that the court would have considered it a nonrenewal. Similarly, if a landlord "renews" a tenant's lease at a new market rate, is that not also a renewal? A renewal contract need not contain identical terms to the original.[16]

Indian Harbor, for its part, points to *Schock v. Penn Township Mutual Fire Insurance Association*, where the Pennsylvania Superior Court noted that "[a] renewal of a policy of . . . insurance is, in effect, a new contract of insurance, and, *unless otherwise expressed*, on the same terms and conditions as the original policy."[17] Indian Harbor seeks a rule that any new contract with notice of new terms qualifies as a renewal. But case law states only that, if an insurance company renews a contract and wants to change terms, it must give notice of the change or the terms will be the same. Neither case law nor logic suggests that notice *implies* that such a new contract is a renewal. Imagine an insurance company that initially agreed to a 100-year contract with a promise of renewal and subsequently gives notice that the "renewal" runs for thirty days. We would be hard pressed

---

[16] *See Am. Cas. Co. of Reading, Pa. v. Continisio*, 17 F.3d 62, 65 (3d Cir. 1994) ("[A] change in material terms [does not necessarily] constitute[] constructive nonrenewal of an insurance policy."); *Stowe Twp. v. Standard Life Ins. Co. of Ind.*, 507 F.2d 1332, 1337 (3d Cir. 1975) (surveying "renewal" insurance contracts with terms different than the original).

[17] 24 A.2d 741, 743 (Pa. Super. Ct. 1942) (emphasis added). Indian Harbor also notes that *Gaston-Lincoln Transit*, on which Furnival relies, contains similar language, that "substantially the same terms" apply on renewal "absent notice to the contrary." 201 S.E.2d at 216.

to consider that a renewal. Tellingly, the cases on which Indian Harbor relies consider whether a new insurance policy may change terms at all, rather than asking whether the change in terms is so drastic as to render it effectively a nonrenewal.[18] While the terms of a renewal contract may change with notice, the key question is how similar the new contract must be, and whether the Indication here meets that standard.

Regardless of the particular degree of similarity required, Indian Harbor's position cannot be what the parties intended.[19] There is no difference between what Indian Harbor proposes and what it had every right to do without a prior promise to renew. If any new offer counts as a renewal, the promise of a renewal is illusory: Indian Harbor may easily satisfy its obligation by offering a contract which it knows does not satisfy Furnival's needs. Indian Harbor argues that the common law duty of good faith and fair dealing provides a backstop that would prevent commercially unreasonable insurance contracts. But the relevant provision of the contract is a promise to offer a renewal, not a reasonable insurance contract. The common law duty, therefore, merely reinforces the idea that Indian Harbor cannot satisfy its obligation by offering a renewal that it knows Furnival will decline. It does not further explicate what constitutes a "good faith" renewal offer.

---

[18] *Continisio*, 17 F.3d at 66 ("[I]f an insured accepts coverage on different terms, with knowledge of the change in coverage, a valid renewal could exist.").

[19] *Murphy* 777 A.2d at 429 (ascertaining the parties' intent is the fundamental rule of contractual interpretation).

On the question of what constitutes a renewal, it is clear under our precedent that a renewal need not be identical to the original.[20]  But to hold that it can be any modification at all would not give effect to the parties' intentions.  In *McCuen v. American Casualty Co. of Reading, Pennsylvania*, the Eighth Circuit considered a situation similar to the one presented here:  a new insurance contract with terms "substantially and materially different from the policy then in effect."[21]  The *McCuen* court reasoned that "[r]efusing to provide coverage and refusing to renew coverage are not identical concepts. . ..  [The insurer] did not refuse to provide (deny) any coverage at all, it simply refused to provide the same coverage as was provided under the existing policy—it refused to renew."[22]  The court held that a renewal requires "continuation of coverage on the same, or nearly the same, terms as the policy being renewed."[23]  We agree with the *McCuen* court and believe that this rule best accords with the intentions of the parties.

## III.

The Indication differed from the Policy in four ways: 1) an updated price; 2) one year of coverage instead of ten; 3) $5 million coverage limit instead of $14 million; 4) exclusion

---

[20] *Continisio*, 17 F.3d at 65.

[21] 946 F.2d 1401, 1404 (8th Cir. 1991).

[22] *Id.*

[23] *Id.* (citing *Davis v. Travelers Ins. Co.,* 196 N.W.2d 526, 530 (Iowa 1972)).  The court ostensibly followed Iowa law, but *Davis* actually stated that unless otherwise expressed, the terms must be the same.  The *McCuen* court added flexibility in holding that a renewal could be "nearly the same" as well.

12

of Elizabethtown. As discussed above, a reasonable change in price should not alone render a new contract a nonrenewal. But the remaining terms must be recognizable extensions of the initial Policy, and they are not. The length of coverage is different, the amount of coverage is different, and the scope of coverage is different. The general subject matter is the same and the parties are the same, but this is not enough. Because Indian Harbor did not offer a contract that is either the same or nearly the same as the Policy, it breached its promise to offer a renewal extension of coverage.

While Indian Harbor breached, Furnival was not entitled to merely send Indian Harbor a check for $520,498 because Indian Harbor need not have offered an identical policy. Furthermore, after the 2006 modification to add Endorsement No. 23, that premium was no longer even accurate. Per Endorsement No. 16, Indian Harbor must offer a contract that can be considered a renewal, and then the parties can negotiate the details.

Indian Harbor complains that holding it to its promise would require renewing the renewal provision itself, and that would obligate Indian Harbor to recursively renew the contract in perpetuity. To the extent Indian Harbor argues that a contract it drafted was not careful enough, we are unmoved. Moreover, in future policies, Indian Harbor need not incorporate the broad renewal provisions that are included here. The issue of a perpetual contract is, however, a question for another day. We hold here only that the terms of a renewal must be the same or nearly the same as the initial contract. The question of being held to a perpetual renewal is not before us and we will not opine on such a question at this time.

## IV.

For the reasons stated above, we will vacate the judgment of the District Court and remand this case to the District Court to order summary judgment in favor of Furnival on the issue of Indian Harbor's breach and for further proceedings not inconsistent with this opinion.