NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-3251
_____

THE AMERICAN INSTITUTE FOR CHARTERED PROPERTY CASUALTY
UNDERWRITERS,
d/b/a The Institutes; THE INSTITUTES LLC,
Appellants

v.

SYDNEY POSNER; THE CLAIMS EXCHANGE INC.
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:19-cv-05369)
U.S. District Judge:  Honorable Nitza I. Quiñones Alejandro
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
December 6, 2024
_____

Before: SHWARTZ, MATEY, and McKEE, <u>Circuit Judges</u>.

(Filed: January 8, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does
not constitute binding precedent.

SHWARTZ, <u>Circuit Judge</u>.

Defendants American Institute for Chartered Property Casualty Underwriters and the Institutes (collectively, "American Institute") appeal several pretrial rulings, jury instructions, the judgment against them, and the order denying them a permanent injunction. For the following reasons, we will affirm.

I

A

American Institute provides professional development resources and other services to insurance industry professionals. In 2018, American Institute acquired Claims and Litigation Management Alliance ("CLM"), which among other things, hosted educational and networking events for such professionals. Sydney Posner served as CLM's Chief Relationship Officer and sold sponsorships for CLM events, and after CLM was acquired, she performed the same role at American Institute.

Posner's employment contract with American Institute provided her with a salary and sales commissions. She also executed a confidentiality and non-solicitation agreement.[1]

About a year and a half into her tenure at American Institute, Posner was terminated for allegedly violating company policy,[2] and American Institute asked her to

---

[1] American Institute also sought to include a non-compete provision, but Posner would not agree to it without additional compensation, which American Institute declined to provide.

[2] American Institute claims that she was terminated for accepting a side payment in connection with a sponsorship deal.

return her company equipment, including a laptop. Posner returned the laptop. An examination of the laptop revealed that Posner had (1) downloaded "very confidential" company information onto external hard drives, App. 7290; (2) erased the web history; and (3) emailed various files to herself.

Shortly after her termination, Posner founded The Claims Xchange Inc. ("CXI"), an organization that, like CLM, held educational and networking events for insurance professionals.

B

American Institute sued Posner for breach of her confidentiality and non-solicitation agreement, conversion of company information, and unfair competition under Pennsylvania common law, among other causes of action. Posner counterclaimed for unpaid commissions and relief under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa. Cons. Stat. §§ 260.1-260.13, among other claims.

Of relevance to this appeal, the District Court dismissed American Institute's unfair competition claim under Federal Rule of Civil Procedure 12(b)(6), determining that Pennsylvania trial courts have recognized a common law tort of unfair competition, but that American Institute failed to plead that Posner's conduct "caused harm to [American Institute's] commercial relations." App. 1. The Court also denied American Institute's motion for summary judgment on Posner's counterclaim for unpaid commissions, concluding that the relevant contracts were unambiguous concerning when commissions were due, but that there was a genuine dispute of material fact as to whether any were unpaid. The Court granted in part American Institute's motion for an adverse

3

inference jury instruction, in light of Posner's failure to produce certain evidence after being ordered to do so.[3]

The jury found, among other things, that: (1) Posner had violated the confidentiality provision of her employment agreement and awarded American Institute $48,830.45 in damages,[4] and (2) that American Institute was liable to Posner for unpaid commissions and awarded her $48,830.45.

After trial, American Institute filed a motion for judgment as a matter of law, or in the alternative to amend the judgment, asserting that there was insufficient evidence to support the jury's verdict. The Court remitted the judgment to omit sales that were not commissionable under its interpretation of the commission agreements.[5]

Finally, the District Court denied American Institute's motion for a permanent injunction, which requested an order requiring Posner to return confidential information belonging to American Institute and barring her from competing with American Institute for three years. The Court determined that American Institute failed to show that it had no adequate remedy at law because evidence, such as expert testimony concerning value

---

[3] During discovery, the Court granted American Institute's motion to compel and ordered Posner to produce any computer devices and two personal email accounts she used around the time of her termination. Posner did not produce a personal laptop, iPad, or email account subject to the Court's order, explaining that the laptop had been stolen, the iPad had been irretrievably lost, and she had deleted her email account after someone told her that her chosen address did not sound sufficiently professional.

[4] The verdict form instructed the jury to award damages on the conversion claim only if they were "not duplicative of damages [it had] already awarded for misappropriation and/or breach of contract." App. 16602. The jury found that Posner had converted American Institute's confidential information but did not award any additional damages on that claim.

[5] The District Court reduced the original award of $48,830.45 to $38,399.82.

4

of the misappropriated information and the jury's monetary award, showed the injury to American Institute could be compensated via damages.

American Institute appeals.

II[6]

A[7]

We first review whether the District Court properly dismissed American Institute's unfair competition claim.

The Pennsylvania Supreme Court has not clearly defined the elements of an unfair competition claim under Pennsylvania common law, see, e.g., Granite State Ins. Co. v. Aamco Transmissions, Inc., 57 F.3d 316, 319 (3d Cir. 1995),[8] and so some Pennsylvania trial courts have applied the Restatement (Third) of Unfair Competition, see, e.g., Babiarz v. Bell Atl.-Pa., Inc., No. 1863 Aug. Term 2000, 2001 WL 1808554, at *9-10 (Pa. Com. Pl. July 10, 2001). We will assume, without deciding, that the Pennsylvania Supreme

---

[6] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1332, and 1367. We have jurisdiction under 28 U.S.C. § 1291.

[7] "We exercise plenary review of a district court's order granting a motion to dismiss for failure to state a claim." Pacira BioSciences, Inc. v. Am. Soc'y of Anesthesiologists, Inc., 63 F.4th 240, 244 n.6 (3d Cir. 2023). We must determine whether the complaint, construed "in the light most favorable to the plaintiff," Santomenno ex rel. John Hancock Tr. v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014) (citation and quotation marks omitted), "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[8] The Pennsylvania Supreme Court has acknowledged the existence of a common law unfair competition claim without defining its elements. See, e.g., Pottstown Daily News Publ'g Co. v. Pottstown Broad. Co., 192 A.2d 657, 662-63 (Pa. 1963).

Court would adopt the Restatement's formulation. See e.g., Acumed LLC v. Advanced

Surgical Servs., Inc., 561 F.3d 199, 227 (3d Cir. 2009).

Under the Restatement, to state an unfair competition claim, a plaintiff must plead

that (1) the defendant engaged in an act defined in the Restatement as an unfair method of

competition (e.g., misappropriation of trade secrets); and (2) the defendant's conduct

caused harm to the plaintiff's commercial relations.[9] See Restatement (Third) of Unfair

Competition § 1 (Am. L. Inst. 1995). American Institute alleged that Posner used its

"highly confidential trade secret and other proprietary information" to solicit some of its

"clients, vendors, advertisers and/or sponsors to terminate or limit their involvement with

[American Institute] and, instead, to associate with CXI," App. 1917-18, and hence

pleaded that Posner and CXI engaged in an unfair method of competition under the

Restatement. See, e.g., Restatement (Third) of Unfair Competition § 1 (identifying

"appropriation of . . . trade secrets" as an example of unfair method of competition).

However, aside from summarily stating that "[b]y their actions and omissions, Posner and

CXI have caused damages to [American Institute]," App. 1924, American Institute did

not allege that Posner's unfair competition caused it to lose customers, good will, or

suffer any other harm. American Institute's conclusory statement does not satisfy the

---

[9] American Institute argues that it need not prove damages as part of its unfair competition claim, relying on Den-Tal-Ez, Inc. v. Siemens Cap. Corp., 566 A.2d 1214, 1232 (Pa. Super. Ct. 1989). However, in that case, the Pennsylvania Superior Court upheld an injunction because plaintiff had shown that potential future disclosure would have a "negative impact on [plaintiff's] place in the . . . market" as well as a potential "positive impact on [defendant's] competitive position." Id. at 1233. American Institute failed to make factual allegations of such harms.

pleading standard. See James v. City of Wilkes-Barre, 700 F.3d 675, 679 (3d Cir. 2012) ("[W]e disregard rote recitals of the elements of a cause of action, legal conclusions, and mere conclusory statements."). As such, the District Court correctly dismissed the claim.[10]

B

Next, we evaluate American Institute's challenge to the District Court's instructions that permitted the jury to draw an adverse inference from Posner's destruction of, or failure to preserve, her computer devices, data, and email account, if it found Posner engaged in such acts.[11, 12] American Institute claims that the District Court

---

[10] Alternatively, even if American Institute had met the pleading standard, the Pennsylvania Uniform Trade Secrets Act expressly "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret." 12 Pa. Stat. and Cons. Stat § 5308. A claim is not pre-empted if it falls under one of the three following exceptions: "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." 12 Pa. Cons. Stat. § 5308(a)–(b). Because American Institute's unfair competition claim rests on the allegation that Posner was "[d]ownloading, exporting, copying and/or removing highly confidential trade secret and other proprietary information"—i.e., misappropriation of a trade secret—their claim is barred. App. 1923; see REVZIP, LLC v. McDonnell, No. 3:19-CV-191, 2023 WL 3260662, at *26 (W.D. Pa. May 4, 2023).

[11] American Institute did not object to the adverse inference instructions either before or after the District Court delivered them, and therefore we review the instructions for plain error, see Fed. R. Civ. P. 51(d), and "will reverse only where the error is fundamental and highly prejudicial, such that the instructions failed to provide the jury with adequate guidance and our refusal to consider the issue would result in a miscarriage of justice," Robinson v. First State Cmty. Action Agency, 920 F.3d 182, 187 (3d Cir. 2019) (quotation marks and citation omitted) (noting that plain error analysis applies for forfeited arguments about jury instructions).

[12] Contrary to American Institute's claim that this issue could be resolved under state law, federal law governs. Most significantly, American Institute relied on Federal

improperly focused its jury charge on spoliation of devices and equipment, rather than information.[13]

---

Rule of Civil Procedure 37 for its request for relief. The advisory committee's note to the 2015 amendment provides that Rule 37 gives courts authority to address a party's failure to preserve evidence, "foreclos[ing] reliance on inherent authority or state law to determine when certain measures should be used." Fed. R. Civ. P. 37(e)(2) advisory committee's note to 2015 amendment. See also Hanna v. Plumer, 380 U.S. 460, 471 (1965) ("When a situation is covered by one of the Federal Rules [of Civil Procedure] . . . the court has been instructed to apply the Federal Rule."); Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (holding "federal law of spoliation applie[d]" in a diversity case).

[13] American Institute specifically objects to the Court's modification of Proposed Jury Instructions 5 and 6. Its Proposed Instruction No. 5 read:

> You have heard that Defendant Posner deleted the browser history on her Dell laptop before returning the laptop to [American Institute], deleted her sydneyposner1@gmail.com account, did not produce her Lenovo laptop for an inspection, and did not produce the iPad she used to access her Gmail account on the morning of September 23, 2019. If you find that this evidence was in Posner's control, the evidence would be relevant and helpful to Posner, and Posner does not satisfactorily explain why it was not produced during trial, you may find that the evidence would have been unfavorable to Posner.

App. 5925. The District Court agreed to charge the jury with this instruction, but changed it slightly to:

> [American Institute] presented testimony or evidence that Ms. Posner deleted the browser history of her dell laptop before returning the laptop to the Institutes; deleted her sydneyposner1@gmail.com account; did not produce her Lenova [sic] laptop for inspection; and did not produce the iPad that she used to access her Gmail accounts . . . .
> If you find that this evidence was within Ms. Posner's control, the evidence would be—and the elements would be relevant and helpful to Ms. Posner, and Ms. Posner did not satisfactorily explain why these devices were not produced during trial, . . . you may find that the evidence would have been unfavorable to Ms. Posner.

App. 8989.

American Institute's Proposed Instruction No. 6 read: "If a party intentionally destroys a relevant document and does not satisfactorily explain why they destroyed the document, you may find that this document would have been unfavorable to the party

Because the instructions, taken as a whole, must inform the jury of the correct legal standard, see Harvey v. Plains Twp. Police Dep't, 635 F.3d 606, 612 (3d Cir. 2011), we consider all the relevant instructions to determine whether there was an instruction error. A review of the District Court's complete set of instructions regarding spoliation shows there was no error. The instructions permitted the jury to draw an adverse inference with respect to both Posner's alleged spoliation involving devices and her failure to produce information after being ordered to do so. See, e.g., App. 8989-90 (jury instruction explaining that if the jury agreed that Posner "altered or destroyed" "her browser history, her sydneyposner1 Gmail account, the laptop and the iPad," it was "permitted but [] not required to infer[] that the altered or destroyed evidence would have been unfavorable to her and favorable to [American Institute]"). Furthermore, American Institute's complaints about the instructions are not well-taken as the instructions

---

who destroyed it." App. 5926. The District Court slightly modified this instruction, ultimately charging:

> If the party intentionally destroys a relevant document or object and does not satisfactorily explain why they are destroyed, you may find that the document and/or object would have been unfavorable to the party who destroyed it. You must decide if any of the equipment Ms. Posner was to return to [American Institute] was destroyed or not, and if the explanation provided Ms. Posner was credible.

App. 8990.

9

delivered were nearly identical to those it proposed.[14]  Accordingly, the adverse inference instructions were not erroneous.[15]

C

We next evaluate American Institute's four arguments seeking to overturn the judgment awarding Posner damages on her unpaid commissions claim.

First, we review American Institute's challenge to the District Court's interpretation of the commission structure[16] and the jury verdict based on this interpretation.  "When the terms of a contract are clear and unambiguous, its meaning must be determined from the four corners of the contract."  In re Diet Drugs (Phentermine/Fenfluramine/Dexfenfluramine) Prod. Liab. Litig., 706 F.3d 217, 223 (3d Cir. 2013) (quotation marks and citation omitted).  If a contract term is ambiguous, a court may examine extrinsic evidence, such as the parties' course of conduct, to determine its meaning.  Id.

Posner's initial employment contract provided:

---

[14] Compare App. 5925-27, with App. 8989-91 (District Court making immaterial adjustments to American Institute's proposed jury instructions, such as changing "[i]f a party intentionally destroys a relevant document" to "[i]f the party intentionally destroys a relevant document or object.").

[15] In its reply brief, American Institute argues that it seeks appellate review not only of the jury instructions delivered, but of the District Court's failure to "impose a proper sanction" to remedy Posner's alleged spoliation.  Appellants' Reply Br. at 13.  However, because the only sanction it sought from the District Court was a mandatory or permissive adverse inference jury instruction, we review only the jury instructions that the Court delivered.

[16] We exercise plenary review of the District Court's summary judgment ruling, which established as a matter of law the meaning of the contract governing Posner's counterclaim for unpaid commissions.  See Indian Harbor Ins. Co. v. F & M Equip., Ltd., 804 F.3d 310, 313 (3d Cir. 2015).

10

You will earn 8% commission on all sales. Commissions will be paid out three times per year, after the following periods or events: commissions earned from sales during the period of January through June, commissions earned from sales during the period of July through December, and commissions earned from sales for the CLM Annual Conference. You must be an active employee . . . on the date of the commission payout to receive the commission pay.

App. 9132. The language shows that Posner was entitled to a commission once the "sale" took place, provided that Posner was an American Institute employee on the next commission payout date. A "sale" is defined as "[t]he agreement by which" something is transferred in exchange for a price. Sale, Black's Law Dictionary (12th ed. 2024).[17] The District Court correctly concluded that, with the exception of sales related to the CLM Annual Conference, the event need not have occurred before Posner received a commission. Put differently, the only condition precedent to earning a commission is the occurrence of a "sale," except for sales for the CLM Annual Conference. Because the District Court's interpretation of the agreement was correct, American Institute's challenge to the jury verdict based on a different interpretation of the commission structure fails.[18]

_____

[17] "When interpreting contracts under Pennsylvania law, courts 'may look to dictionary definitions to' determine the plain meaning of a contract." Darrington v. Milton Hershey Sch., 958 F.3d 188, 195 n.8 (3d Cir. 2020) (quoting Commonwealth ex rel. Shapiro v. UPMC, 208 A.3d 898, 906 (Pa. 2019)).

[18] American Institute also argues that Posner's counterclaim should never have gone to the jury because there is "no evidence to support [Posner's] argument that any of the commissions she claimed were unpaid." Appellants' Br. at 52. Posner, however, testified that she was not paid the commissions she claimed at trial, and it was up to the jury to determine whether to credit this testimony. See Rodriquez v. Se. Pa. Transp. Auth., 119 F.4th 296, 298 (3d Cir. 2024) ("[We] may not . . .determine the credibility of witnesses . . . but rather may grant a Rule 50 motion only if upon review of the record, it

11

Second, we address American Institute's claim that Posner violated her discovery obligations by untimely disclosing documents and damages calculations concerning unpaid commissions.[19]  Because the documents and calculations were based on a spreadsheet American Institute itself produced in discovery, the District Court did not abuse its discretion by allowing Posner to offer damages testimony based on that spreadsheet.

Third, American Institute argues that it was error to allow Posner to request specific damages amount in her closing argument.[20]  American Institute, however, did not contemporaneously object when Posner's counsel stated the damages figure she sought, and so it forfeited any argument that such statement was improper.  Murray v. Fairbanks Morse, 610 F.2d 149, 152 (3d Cir. 1979) ("Counsel's failure to object precludes him from seeking a new trial on the grounds of the impropriety of opposing counsel's closing remarks.").

Fourth, American Institute claims that Posner suggested to the jury that the District Court "blessed" the damages amount she sought.  Appellants' Br. at 53.  American Institute timely objected to Posner's suggestion that the Court approved the calculation of her damages figure.  The Court sustained the objection and instructed the

---

can be said as a matter of law that the verdict is not supported by legally sufficient evidence." (quotation marks and citation omitted; alterations in original)).

[19] We review the District Court's decisions on whether and how to sanction discovery violations for abuse of discretion.  See Grider v. Keystone Health Plan Cent., Inc., 580 F.3d 119, 134 (3d Cir. 2009).

[20] We review a district court's treatment of an allegedly improper attorney statement during closing argument for abuse of discretion.  See Forrest v. Beloit Corp., 424 F.3d 344, 351 (3d Cir. 2005).

jury that it did not want the jury "to get the impression that [the Court] agreed to that number." App. 8887. Because we presume juries follow their instructions, any prejudice from the comment was thus cured. See Robinson, 920 F.3d at 191.

Accordingly, American Institute's challenges to the judgment fail.

D[21]

Finally, we address whether the District Court properly denied American Institute's request for a permanent injunction. The purpose of an injunction is to prevent future harm. See, e.g., SEC v. Gentile, 939 F.3d 549, 556 (3d Cir. 2019). A court may impose a permanent injunction where the movant shows that: "(1) it will suffer irreparable injury [absent the injunction], (2) no remedy available at law could adequately remedy that injury, (3) the balance of hardships tips in its favor, and (4) an injunction would not disserve the public interest." TD Bank N.A. v. Hill, 928 F.3d 259, 278 (3d Cir. 2019) (citation omitted). "[T]he availability of adequate monetary damages belies a claim of irreparable injury." Id. at 282 (quotation marks and citation omitted).

Here, the District Court did not abuse its discretion in denying American Institute's motion. The record does not show that Posner has used or intends to use confidential information belonging to American Institute and thus there is not ongoing or future harm that an injunction would prevent.[22] See Holiday Inns of Am., Inc. v. B & B

---

[21] We review a district court's ruling on a motion for a permanent injunction for abuse of discretion. NAACP v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464, 475-76 (3d Cir. 2011).

[22] Moreover, the jury's $48,830.45 award, which it curiously labelled "nominal damages," App. 16601, shows that monetary relief is available and therefore undermines the need for injunctive relief. See TD Bank N.A., 928 F.3d at 282.

13

Corp., 409 F.2d 614, 618 (3d Cir. 1969).  Accordingly, American Institute's request for a permanent injunction fails.

III

For the foregoing reasons, we will affirm.